**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Malcolm Earl THOMAS, Defendant–
Appellant.**

**No. 95–1102.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17,1995.

Decided Jan. 16, 1996.

Michael Hluchaniuk, Asst. U.S. Atty. (argued and briefed), Bay City, MI, for plaintiff-appellee.

Thomas J. Plachta (argued and briefed), Brady & Plachta, Bay City, MI, for defendant-appellant.

Before: BATCHELDER and MOORE, Circuit Judges; ENSLEN, Chief District Judge.[*]

MOORE, Circuit Judge.

■ Appellant Malcolm Earl Thomas appeals his conviction for distribution of crack cocaine, arguing that the district court made three erroneous evidentiary rulings.

[*] The Honorable Richard A. Enslen, Chief United States District Judge for the Western District of Michigan, sitting by designation.

First, Thomas argues that the district court erred by allowing his co-defendant, Darryl Nicholson, to testify about uncharged drug transactions. Second, Thomas claims that the district court should not have allowed a police officer to testify both as a fact witness and as an expert about the methods and techniques of street level drug dealers. Third, Thomas contends that the district court erred by refusing to allow him to call an expert witness to testify about the incentive for a government witness to lie under oath in order to receive a sentence reduction pursuant to a plea agreement. Because the district court did not abuse its discretion in making any of these three evidentiary rulings, we affirm.

An undercover police officer purchased crack cocaine from Thomas on June 4, 1992. A confidential informant accompanied the officer to an area in Saginaw, Michigan, where they found Thomas immediately in front of Hell Lover's Motorcycle Club ("HLMC"). When they arrived, Thomas approached the vehicle and, after a short conversation, he reached into his pocket and produced a crumpled brown piece of paper which contained approximately twelve "rocks" of crack cocaine.

Detective John Todd observed Thomas, Nicholson, and a third man standing on the sidewalk in the vicinity near HLMC on October 20, 1992. When Todd stopped his police car, Thomas and Nicholson ran toward the Soul Survivors Motorcycle Club, directly across the street from HLMC. As Thomas ran away, he threw to the ground a crumpled piece of brown paper containing approximately thirteen "rocks" of crack cocaine.

Thomas was first indicted in April 1994. On May 11, 1994, Thomas was charged in a superseding indictment with distribution of crack cocaine on or about June 4, 1992, in violation of 21 U.S.C. § 841(a)(1). Also named in the superseding indictment were two co-defendants, Darryl Nicholson ("Nicholson") and Travis Lamar Nicholson, who were charged with a series of drug related crimes. After his co-defendants pleaded guilty, Thomas proceeded to trial and was convicted.

## I.

Nicholson testified at Thomas's trial that during the period May through November of 1992 he "fronted" powder cocaine to Thomas, which Thomas converted to crack and sold in front of HLMC almost every day during this period. Nicholson was prepared to testify that Thomas sold crack cocaine in this area from the summer of 1991 to the spring of 1993, but the district court limited his testimony at trial to the six-month period surrounding the sale at issue in order to minimize the prejudicial effect of the evidence.

Thomas contends that the district court erred by allowing Nicholson to testify at all about uncharged drug transactions involving Thomas. Thomas's contentions implicate Federal Rule of Evidence 404(b), which provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

This provision allows for limited admissibility of other crimes or acts evidence.

The district court first ruled that Nicholson's testimony was not "other acts" evidence under Rule 404(b) because it relates to the source of the cocaine distributed on or about June 4, 1992, and thus is directly related to the charge against Thomas in this case. Alternatively, the district court found that even if Nicholson's testimony were Rule 404(b) evidence, it was admissible to prove the material issue of Thomas's identity. Thomas's identity was a material issue because his primary defense at trial was that the government could not prove that he was the man who sold crack cocaine to the undercover officer on June 4, 1992. Thomas's girlfriend, with whom he had two children, testified that many people at HLMC, including herself, regularly mistook other people for Thomas. Thus, under Rule 404(b) the testimony was relevant to prove identity. Moreover, the district court conducted the balancing test under Federal Rule of Evidence 403, which

applies whether or not the testimony constituted "other acts" evidence, and found that the testimony was "so highly probative that any possible prejudice sort of evaporates in comparison to it."

■ We affirm the district court's ruling that the Nicholson testimony was admissible. First, the district court correctly ruled that Nicholson's testimony concerning the source of defendant's supply of cocaine was directly related to the specific crime charged. *See United States v. DeClue,* 899 F.2d 1465, 1472 (6th Cir.1990) ("Evidence which is probative of the crime charged and does not solely concern uncharged crimes is not 'other crimes' evidence."). Therefore, the district court did not abuse its discretion by finding that the challenged testimony was relevant pursuant to Federal Rule of Evidence 401.[1] *See United States v. Hawkins,* 969 F.2d 169, 174 (6th Cir.1992) (evidentiary rulings on matters of relevancy are reviewed for abuse of discretion), *cert. denied,* 506 U.S. 1069, 113 S.Ct. 1021, 122 L.Ed.2d 168 (1993).

■ Second, even assuming that Nicholson's testimony related only to other crimes or acts, it was admissible under Rule 404(b). Reviewing the admission of Rule 404(b) evidence involves a three-step analysis. *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992) (en banc). First, we review for clear error the district court's factual determination that sufficient evidence exists that the other acts occurred. *Id.* Second, we review de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose. *Id.* Third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403. *Id.* at 1262. Thomas

does not dispute that the government introduced Nicholson's testimony for a proper purpose or that the other acts actually occurred;[2] rather, he argues that the testimony should have been excluded under Rule 403. Therefore, we review this aspect of the district court's decision for abuse of discretion.

■ Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Furthermore, the court reviews the disputed evidence in "the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993) (citation omitted). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Id.* (citation omitted). A "district court has broad discretion in balancing probative value against potential prejudicial impact." *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991).

■ Thomas makes the conclusory argument that the evidence should have been excluded because it "was clearly more prejudicial than probative" without stating how he was prejudiced. *See Bonds,* 12 F.3d at 573. Since the evidence about the uncharged drug transactions involved the same type of conduct and occurred during the same time frame and in the same location as the offense charged, it was highly probative on the disputed issue of identity. Furthermore, the

---

1. Rule 401 provides that:
   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2. We nonetheless find that the district court did not abuse its discretion in finding that Nicholson's testimony was relevant to establish the disputed issue of Thomas's identity. "To be relevant, 'the evidence must relate to a matter which is "in issue," and must deal with conduct sub-

stantially similar and reasonably near in time to the offenses for which the defendant is being tried.'" *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991) (citation omitted). "To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, 'whether that evidence is probative of a material issue other than character.'" *Id.* (citing *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988)).

district court instructed the jury that Thomas was only on trial for the particular crime charged in the indictment:

> Remember that the defendant is on trial only for the particular crime charged in the indictment. Your job is limited to deciding whether the government has proved the charges in the indictment.

The district court also instructed the jury that it could not consider "other acts" testimony as direct evidence that Thomas committed the crime charged:

> (1) You have heard testimony that could indicate that the defendant did some acts other than the specific one charged in the indictment, such as, for example, the possession or distribution of cocaine at other times.
>
> (2) You cannot consider such testimony as *direct* evidence that the defendant committed the crime that he is on trial for now. Instead, you can consider it only in deciding whether the person distributing cocaine on June 4, 1992 was the defendant. Do not consider it for any other purpose.
>
> (3) Remember that the defendant is on trial here only for the crime charged in the indictment, not for any other acts. Do not return a guilty verdict unless the government proves the crime charged beyond a reasonable doubt.

*See Feinman,* 930 F.2d at 499 (finding that limiting instruction minimizes possible prejudicial effect).

Despite their obvious potential for prejudice, uncharged drug transactions are frequently admissible as "other acts" evidence to prove material issues in dispute in criminal narcotics cases. *E.g., Gessa,* 971 F.2d at 1259–62 (finding no Rule 403 problem in admitting evidence of prior "excursions" to obtain large quantities of cocaine where "probative of defendant's ability and opportunity to participate in an importation scheme"); *Feinman,* 930 F.2d at 499 (ruling that district court did not abuse its discretion by admitting evidence of defendant's involvement in a marijuana shipment two months before the offense charged where the prior shipment involved the same participants and mode of operation as that charged in the indictment and the defendant claimed he did

not know the truck he drove contained marijuana); *United States v. Robison,* 904 F.2d 365, 368 (6th Cir.) (finding no abuse of discretion to admit evidence about drug sales that occurred five months before the onset of the charged drug conspiracy to prove the defendant's intent where the defendant claimed he was merely a user, not a dealer), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990); *United States v. Elkins,* 732 F.2d 1280, 1286 (6th Cir.1984) (finding evidence of prior drug transactions properly admitted to prove intent in prosecution for drug distribution). Since the uncharged drug transactions Nicholson described tended to prove that it was Thomas who sold crack at the same location and during the same time frame as the offense charged, and because Thomas has not shown how the probative value of such evidence was substantially outweighed by any unfair prejudice, we find that the district court did not abuse its discretion by admitting Nicholson's testimony about Thomas's other drug transactions.

## II.

This court likewise rejects Thomas's argument that the district court erred by allowing Detective Todd to testify as both a fact witness and an expert witness about drug trafficking. In his role as expert witness, Todd testified that drug dealers who sell crack at the "street" level normally do not keep written records, front drugs to their customers, or use scales, and that they generally do use pagers and carry "rocks" that sell for approximately twenty dollars each. Pursuant to Federal Rule of Evidence 702, expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, [and the witness is] qualified as an expert by knowledge, skill, experience, training, or education. . . ." The Supreme Court recently clarified the standard for admissibility of expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

In *Daubert,* the Supreme Court held that the Federal Rules of Evidence govern the

admissibility of expert testimony and that Fed.R.Evid. 702 supersedes *Frye v. United States,* 293 F. 1013, 1014 (1923), which required that expert scientific testimony be "generally accepted" to be admissible. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2793. Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R.Evid. 702. The Court noted that "[t]his condition goes primarily to relevance." *Id.* 509 U.S. at ——, 113 S.Ct. at 2795. Furthermore, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* 509 U.S. at ——, 113 S.Ct. at 2796. The Court listed several non-exclusive factors for district courts to consider in deciding whether to admit expert scientific testimony. *Id.* 509 U.S. at ——–——, 113 S.Ct. at 2796–97. The Court stated that its discussion was "limited to the scientific context," as opposed to "technical, or other specialized knowledge" to which Rule 702 also applies. *Id.* 509 U.S. at —— n. 8, 113 S.Ct. at 2795 n. 8. The dissent in *Daubert* suggested that the Court left unanswered the question whether its opinion applies only to "scientific knowledge." *Id.* 509 U.S. at ——, 113 S.Ct. at 2800.

This circuit has found that although *"Daubert* dealt with scientific experts, its language relative to the 'gatekeeper' function of federal judges is applicable to all expert testimony offered under Rule 702." *Berry v. Detroit,* 25 F.3d 1342, 1350 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). Thus, under the Federal Rules of Evidence, " 'the trial judge must ensure that any and all ... testimony or evidence admitted is not only relevant, but reliable.' " *Id.* (quoting *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2795). In *Berry,* an exces-

sive force case brought under 42 U.S.C. § 1983, a law enforcement officer testified as an expert about police practices and stated that the police department's failure to discipline and train its officers not to use improper deadly force amounted to "gross negligence". *Berry,* 25 F.3d at 1353. This court found that the witness lacked the necessary qualifications and that counsel had laid no foundation for his "expert" testimony about "police policies and practices", including the department's alleged failure to properly discipline officers for use of excessive force. *Id.* at 1352. In addition, this court held that the witness's "methodology was as suspect as his conclusions" since he merely reviewed annual summary sheets documenting statistics of shooting incidents involving police officers without reviewing the underlying facts to determine whether any force used may have been justified. *Id.*

In contrast, in the instant case, Thomas does not challenge the qualifications of the government's expert or argue that his testimony is unreliable.[3] Rather, Thomas claims that testimony about drug trafficking is unnecessary since jurors are familiar with the methods and terms involved in the drug trade. Thomas also contends that the potential for unfair prejudice is exacerbated when expert testimony is offered by an officer involved in the specific criminal case on trial.

■ "Appellate review of trial court rulings on the admissibility of expert opinion testimony under Fed.R.Evid. 702, depending upon the assignment of error, may involve as many as three separate standards of review." *Cook v. American Steamship Co.,* 53 F.3d 733, 738 (6th Cir.1995). First, we review the trial court's preliminary factfinding under Federal Rule of Evidence 104(a)[4] for clear

---

3. Todd had been a police officer for almost twenty-five years and had worked for four and a half years in a special division focusing on drug cases, particularly crack cocaine cases. He had attended several schools relating to drug investigations and had been involved in executing over one thousand search warrants, most of which related to crack cocaine. Todd had also been involved in more than one thousand controlled buys of drugs and had previously testified as an expert witness in this area numerous times.

4. Federal Rule of Evidence 104(a) provides:
   Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) [which deals with rulings of conditional admissibility of evidence or testimony subject to the subsequent introduction of additional proof]. In making its determination it is not bound by the rules of evidence except those with respect to privileges.

error. *Id.* Second, the trial court's determination whether the opinion the expert will offer is properly the subject of "scientific, technical, or other specialized knowledge" is a question of law, which we review de novo. *Id.* Third, the trial court's determination whether the proffered expert opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue" is a determination of relevance, which this court reviews for abuse of discretion. *Id.* In addition, the balancing of probative value against the potential for unfair prejudice under Federal Rule of Evidence 403 is also reviewed only for abuse of discretion. *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993). Thus, in the instant appeal, we review for abuse of discretion the district court's determinations that Todd's testimony would be helpful to the jury and that the probative value of the testimony is not substantially outweighed by any unfair prejudice.[5]

Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror. This circuit has allowed police officers to testify as expert witnesses about criminal activity since "[k]nowledge of such activity is generally 'beyond the understanding of the average layman.'" *United States v. Pearce,* 912 F.2d 159, 163 (6th Cir.1990) (citation omitted) (finding that "[l]aw enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes."), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). *See also United States v. Straughter,* 950 F.2d 1223, 1232–33 (6th Cir.1991) (rejecting defendant's challenge to the qualification of a detective as an expert on the pricing of cocaine), *cert. denied,* 502 U.S. 1119, 112 S.Ct. 1238, 117 L.Ed.2d 471 (1992), *and cert. denied,* 503 U.S. 948, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992), *and cert. denied,* 503 U.S. 976, 112 S.Ct. 1601, 118 L.Ed.2d 315 (1992); *United States v. Gastiaburo,* 16 F.3d

582, 588–89 (4th Cir.) (upholding the admission of law enforcement officer's expert testimony concerning modus operandi of drug dealers and intent to distribute controlled substances), *cert. denied,* —— U.S. ——, 115 S.Ct. 102, 130 L.Ed.2d 50 (1994); *United States v. Foster,* 939 F.2d 445, 450–53 & n.6 (7th Cir.1991) (ruling that district court did not abuse its discretion by admitting expert testimony about drug trafficking); *United States v. McDonald,* 933 F.2d 1519, 1520–23 (10th Cir.) (finding that district court did not abuse its discretion by admitting expert testimony of law enforcement officer about "street level" drug dealing because jurors do not have "background knowledge of how a drug dealer works"), *cert. denied,* 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). We agree that, without expert testimony, the average juror is unlikely to understand the significance of drug paraphernalia, quantities, and prices or appreciate the difference between "street level" drug dealers and other types of distribution operations. Therefore, the district court did not abuse its discretion in determining that Todd's testimony would be helpful to the jury.

■ Thomas contends that even if expert testimony would aid the jurors' understanding of the drug trade, an officer should not be permitted to testify in a single case as both a fact witness and an expert witness. Thomas correctly points out that when a police officer testifies in two different capacities in the same case, there is a significant risk that the jury will be confused by the officer's dual role. *See, e.g., Foster,* 939 F.2d at 452 ("When the expert witness also serves as an eyewitness, the district court and the prosecutor should exercise special caution to ensure that the jury understands its function in evaluating the evidence and is not confused by the witness's dual role."). Nonetheless, it is "not improper for the government to elicit ... expert testimony from law enforcement officers who also testified as fact witnesses." *United States v. Young,* 745 F.2d 733, 760 (2d Cir.1984) (citations omit-

---

5. To the extent the issue whether Todd's testimony would be helpful to the jury coincides with the question whether the testimony involved a proper subject for expert testimony under Fed.R.Evid.

702, we find de novo that the testimony involved "specialized knowledge" that Todd had gained from the extensive training and experience outlined above. *See supra* note 4.

ted), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Although the government should exercise caution when using the same officer as an expert and a fact witness, we refuse to adopt a per se prohibition of this practice. We note that both the district court and the prosecutor should take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give proper weight to each type of testimony. In the instant case, the prosecutor did delineate the transition between the examination of Todd as an expert witness and questions relating to his role as a fact witness. *See Foster,* 939 F.2d at 453 (noting that the manner in which the prosecutor conducted the examination helped to distinguish the dual roles of the witness). Therefore, we find that the district court did not abuse its discretion by allowing Todd to testify in both capacities.

■ Thomas further argues that the probative value of Todd's testimony is substantially outweighed by its prejudicial effect in light of the "aura of special reliability and trustworthiness" present when prosecutors offer a law enforcement officer's expert testimony in a criminal case. Although the use of expert testimony in a criminal case may warrant extra caution, Thomas has not indicated how Todd's testimony unfairly prejudiced him. Unfair prejudice may exist, for example, where the government introduces expert testimony about drug transactions that has no bearing on any material issue in the case. *See, e.g., United States v. Green,* 548 F.2d 1261, 1268–70 (6th Cir.1977) (finding that "[f]acts such as the number of dosage units which were theoretically manufacturable from the chemicals found, the anticipated purity of the final product, the street price of a dosage unit, and the details of other illegal drug transactions had no bearing upon Appellants' culpability for conspiracy to manufacture" where "the indictment ... made no mention of the sale or distribution of [the drug]"). In contrast, defense counsel in the instant case indicated that he intended to argue that police did not find the typical corroborating evidence, such as scales and ledgers, when they executed a search warrant at Thomas's residence. Therefore the district court did not abuse its discretion by allowing Todd to explain "street level" drug trafficking, including what items one would expect a street dealer to possess (e.g., pagers and "rocks") and what items a street dealer would not likely possess (e.g., scales and ledgers). Furthermore, the district court gave a cautionary instruction at the conclusion of the case designed to minimize any possible unfair prejudicial impact:

> You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

Thus, we hold that the district court did not abuse its discretion when it rejected Thomas's argument that Todd's testimony should have been excluded because of unfair prejudice and allowed Todd to testify both as a fact witness and as an expert about "street level" drug trafficking.

### III.

Finally, the district court did not abuse its discretion by refusing to allow Thomas to introduce testimony from "an experienced federal criminal practitioner" about the incentive a person such as Nicholson would have to give false testimony as a result of a plea agreement containing a promise of a reduced sentence in exchange for cooperation with the government. In *United States v. French,* 12 F.3d 114 (8th Cir.1993), the Eighth Circuit affirmed the district court's refusal to allow an attorney to testify as an expert witness about the impact on witness credibility of substantial assistance reductions under the Sentencing Guidelines. *Id.* at 116–18. The court reasoned that "it is clearly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant in exchange for a lower sentence" and that "[t]he credibility of witnesses is a determination for the factfinder...." *Id.* at 117. Similarly, the

district court in the instant case did not abuse its discretion by finding that the jury could fully understand, without expert testimony, the incentive a government witness might have to lie under oath, and that therefore the proposed testimony would not be helpful to the jury here.[6]  *See Pearce*, 912 F.2d at 163 (stating that a judge has broad discretion to admit expert testimony to assist the trier of fact in areas that are "beyond the understanding of the average layman").

Furthermore, Thomas's attorney cross-examined Nicholson extensively about the incentive he had to lie under oath in order to guarantee a sentence reduction under his plea agreement.  In addition, the district court instructed the jury to treat Nicholson's testimony with caution:

> You have heard testimony from witness, Darryl Nicholson, who was promised that the government may ask for a reduction in his sentence in exchange for truthful testimony and information in this and other cases.  It is permissible for the government to make such a promise.  Still, you should treat the testimony of this witness with more caution than the testimony of other witnesses.  You should consider whether the testimony may have been influenced by the government's promise.

*See French*, 12 F.3d at 117 (stating that a similar cautionary instruction, coupled with defense counsel's statements in closing argument that the witnesses were not credible, "sufficiently communicated to the jury the information it needed to assess the incentives government witnesses had to 'stretch or

shade the truth in order to obtain sentence reductions.'") (citation omitted).

Thus, in light of the jurors' ability to understand the incentives created by a plea agreement and the risk that an expert testifying about witness credibility may usurp the jury's role, the district court was well within its discretion in refusing to allow testimony by a lawyer expert in criminal law about Nicholson's motivation to lie.[7]  Furthermore, in light of the defendant's ability to cross-examine Nicholson and the district court's cautionary jury instruction, even if the district court had erred by disallowing the expert testimony, any error would be harmless.

## IV.

Since the district court did not abuse its discretion with respect to any of the evidentiary rulings from which Thomas appeals, we AFFIRM his conviction.  Moreover, Thomas's pro se motion in this court for a downward departure from the applicable sentencing guideline range pursuant to 18 U.S.C. § 3553(b) is DENIED.[8]

---

**6.**  Although the inquiry under Fed.R.Evid. 702 is whether expert testimony will help the jury understand the evidence or determine a fact in issue, many courts have formulated the question as whether expert testimony improperly addresses matters within the understanding or common knowledge of the average juror or invades the province of jury.  *See* Michael H. Graham, *Federal Practice and Procedure* § 6644, at 266 n.4 (1992).  "To the extent that such articulation is another way of stating that the experts' [sic] opinion is not helpful to understanding the evidence or to determining a fact in issue, i.e., is not helpful to comprehension or explanation, the statement is not objectionable." *Id.*

**7.**  We also doubt that an attorney would be qualified to testify as an expert on this subject since it

would involve an opinion about the mental state of government witnesses.

**8.**  Thomas did not move for a downward departure before the district court, and even if he had, it is well settled that where a sentence is within the applicable guideline range, and is otherwise valid, it may not be appealed on the ground that the district court failed to consider factors which a defendant feels entitled him or her to a downward departure.  *United States v. Loehr*, 966 F.2d 201, 204 (6th Cir.), *cert. denied*, 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 582 (1992).  *See also United States v. Brown*, 66 F.3d 124, 128 (6th Cir.1995) ("a lower court's informed decision not to depart from a valid guideline range is not reviewable").