81 F.3d 161
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward James DEMAREY, Defendant-Appellant.
 No. 95-1083.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1996.
 
 Before: WELLFORD, KENNEDY and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Edward James Demarey appeals his conviction on two counts of theft of government funds and one count of making a false statement to a United States agency. Defendant argues that the District Court (1) erred when it did not dismiss the superseding indictment; (2) improperly admitted certain exhibits into evidence; (3) erred when it admitted the testimony of Tracy McGhee; and (4) improperly determined the loss to the government for purposes of sentencing. For the reasons stated, we AFFIRM the decision of the District Court.
 
 I. Facts
 
 2
 Defendant was the chief financial officer of the Department of Veterans Affairs ("VA") hospital in Battle Creek, Michigan. Between January of 1990 and February of 1991, he submitted numerous "public vouchers" requesting either reimbursement for expenditures allegedly incurred for the benefit of the VA hospital or money to replenish the VA hospital's checking account. Once the vouchers were approved, the agent cashier, a subordinate of the defendant, disbursed the cash to the defendant in one hundred dollar denominations, as per his request. Defendant not only failed to deposit most of this money into the checking account, but also withdrew money from that account by purchasing money orders.
 
 
 3
 On a daily basis, the agent cashier generated accountability reports summarizing her cash payments and attached the vouchers and documentation supporting the disbursements. Once reviewed for completeness and accuracy, the accountability reports were placed in a file cabinet and stored as part of the hospital's permanent records. Defendant's subordinates observed him removing documents from the file cabinet containing the accountability reports, and after noticing that defendant's vouchers were missing from the file cabinet, began photocopying them before filing them with the accountability reports.[1]
 
 
 4
 At trial, Tracy McGhee, the girlfriend of defendant's brother-in-law, Mike Worthen, testified that in August of 1992, upon defendant's instruction and request, Worthen and she went to a remote area of Battle Creek, dug up a duffel bag filled with one hundred dollar bills, and delivered the package to defendant in Albuquerque, New Mexico. While in New Mexico, defendant gave them between $11,000 and $13,000 in cash, all in denominations of one hundred dollar bills. Although defendant told McGhee that this cash came from his gun business, McGhee testified that her boyfriend, defendant's business partner, realized no profits from the business. This was corroborated by proof that the defendant reported losses from the business during the four years preceding 1993.
 
 
 5
 A federal grand jury indicted defendant on one count of embezzling cash from the VA hospital, one count of making a false statement on a VA reimbursement voucher, and one count of embezzling VA hospital funds by purchasing money orders drawn on the hospital's checking account. This original indictment contained references to specific amounts of money allegedly embezzled by the defendant.
 
 
 6
 Six months later, a grand jury returned a superseding indictment against the defendant. This indictment was identical to the original indictment except that it omitted references to precise amounts that defendant allegedly embezzled; instead, each embezzlement count simply alleged the embezzlement of funds in excess of one hundred dollars.
 
 
 7
 Defendant was convicted on all three counts and was sentenced to a forty month term of imprisonment. Defendant appeals his conviction on a number of grounds, which we address in turn.
 
 II. Superseding Indictment
 
 8
 Defendant claims that the District Court erred by refusing to dismiss the superseding indictment, suggesting that the District Court's refusal to disclose information regarding the number of participants on the second grand jury and the proceedings before it rendered the superseding indictment defective.[2] We review the District Court's refusal to dismiss the superseding indictment for abuse of discretion. United States v. Overmyer, 899 F.2d 457, 465 (6th Cir.), cert. denied, 498 U.S. 939 (1990).
 
 
 9
 The superseding indictment is signed by the grand jury foreperson and indicates that it is a true bill; that is, a quorum of grand jurors agreed to indict. Defendant has presented no evidence impeaching the integrity of the grand jury foreperson's signature. Therefore, we reject plaintiff's argument that the superseding indictment is defective because the number of grand jurors is unknown.
 
 
 10
 Additionally, to lift the veil of secrecy surrounding grand jury proceedings, the defendant must demonstrate that a particularized need outweighs the general rule of grand jury secrecy. United States v. Sells Eng'g, Inc. 463 U.S. 418, 443 (1983). Defendant has not identified anything in the record that suggests that there were any irregularities in the grand jury proceedings. See United States v. Canino, 949 F.2d 928, 943 (7th Cir.1991), cert. denied, 504 U.S. 910 (1992). He merely suggests that the proceedings could have been tainted. However, mere allegations of improper procedure without any facts supporting those allegations are not enough to demonstrate particularized need. Because defendant has failed to show a particularized need, we reject his argument that the District Court's refusal to disclose the grand jury proceedings has rendered the indictment defective.
 
 
 11
 Therefore, we find no abuse of discretion in the District Court's refusal to dismiss the superseding indictment.
 
 III. Exhibits 1 Through 29
 
 12
 At trial, the government offered, and the District Court admitted, into evidence Exhibits 1 through 29: public vouchers submitted by the defendant for reimbursement. Defendant first argues that the District Court admitted these exhibits contrary to the authentication requirement of FED.R.EVID. 901 and without a showing of relevance. We review a District Court's evidentiary rulings for abuse of discretion. United States v. Moreno, 933 F.2d 362, 375 (6th Cir.), cert. denied, 502 U.S. 895 (1991).
 
 
 13
 Federal Rule of Evidence 901 requires evidence to be authenticated before being admitted. Evidence that supports "a finding that the matter in question is what its proponent claims" satisfies the authentication requirement. FED.R.EVID. 901(a).
 
 
 14
 Defendant claims that the terms of, the physical elements of, and the information contained in Exhibits 1 through 29 suggest that they are not authentic. First, he argues that the exhibits are not reliable because they were altered through the course of the investigation. Defendant seems to refer to the fact that the supporting documentation for certain vouchers did not reflect the amount requested on the voucher. The agent cashier, however, testified that at the time the vouchers were submitted and paid the supporting documentation totaled the amount requested on the voucher. Moreover, the absence of supporting documentation attached to the voucher does not impeach the voucher's authenticity. At most, it affects the weight a juror may choose to attach to the amount claimed on the voucher.
 
 
 15
 Second, defendant claims that the admission of certain vouchers not marked "paid," as required by the VA hospital's accounting practices, was an abuse of discretion. The absence of the "paid" stamp, however, does not impeach the authenticity of those vouchers not marked "paid." The agent cashier explained that at the time these vouchers were submitted she was not accustomed to stamping vouchers paid as that was a recent change in procedure. Therefore, some vouchers that were in fact paid may not have been stamped "paid." Furthermore, the District Court credited the testimony of witnesses who testified that all the vouchers offered into evidence were paid, even though not all of them were stamped, "paid." Therefore, we find that the fact that some of the vouchers were not stamped "paid" does not preclude a finding that they were the vouchers defendant submitted for reimbursement, were approved, and were paid.
 
 
 16
 Third, defendant objects to the admission of certain vouchers that were marked with notations that did not exist on the originals. Even though some of the vouchers have markings on them, the markings cover neither the amounts submitted for reimbursement nor the defendant's signature. Moreover, the agent cashier testified regarding which notations were not on the vouchers when they were submitted for reimbursement. Because they do not appear to alter or modify any material part of the voucher and there was testimony regarding their original form, it is difficult to see how the markings' presence could have affected the case in any way. The record reveals no genuine issue as to the vouchers' authenticity and no suggestion of unfairness arises by their admission, especially since the notations have nothing to do with the issues of this case. The markings, therefore, should go to only the weight attached to the exhibits, see Metallurgical Indus. Inc. v. Fourtek, Inc., 790 F.2d 1195, 1207 (5th Cir.1986), a matter for the jury to consider in view of the authentication evidence and the appearance of the vouchers themselves. See Scharfenberger v. Wingo, 542 F.2d 328, 333 (6th Cir.1976).
 
 
 17
 Finally, defendant claims that because the vouchers cannot be linked to any of the transactions that constituted embezzlement of public moneys or property, they were not relevant to the proceedings and thus were improperly admitted. We find defendant's argument to be without merit. The District Court credited the testimony of witnesses who testified that all the vouchers were signed by the defendant and those monies requested were paid to the defendant. The vouchers were relevant to defendant's request and receipt of VA hospital funds, a foundation necessary to prove misappropriation of public funds.
 
 
 18
 We conclude, therefore, that the District Court's admission of Exhibits 1 through 29 was not an abuse of discretion, as they were properly authenticated and relevant to the proceedings.
 
 IV. Exhibits 30 Through 75
 
 19
 Defendant also argues that the District Court improperly admitted Exhibits 30 through 75, accountability reports compiled by the agent cashier at the VA hospital, on the grounds that they were not relevant because they could not be connected to the alleged embezzling transactions and were not properly authenticated. Again, we review a District Court's evidentiary rulings for abuse of discretion. Moreno, 933 F.2d at 375.
 
 
 20
 Defendant argues that the agent cashier testified that a majority of these documents could "not be attributed" to transactions conducted by the defendant. Defendant claims that based on this testimony no reasonable juror could have reasonably concluded that defendant was involved in those transactions. Therefore, those exhibits were not relevant.
 
 
 21
 We disagree. On redirect, the agent cashier testified that when she testified that particular accountability reports were "not attributed to" the defendant she meant that the vouchers supporting the disbursements were missing. Furthermore, she testified that she recalled paying defendant the money attributable to the missing vouchers. Because the accountability reports documented transactions in which the defendant was involved, they were in fact relevant to the proceedings.
 
 
 22
 Next, defendant argues that Exhibits 30 through 75 were not reliable because they were not prepared according to a process or system designed to produce accurate results. Government witnesses, however, testified as to how the accountability reports were generated and we agree with the District Court's finding that the documents were compiled and maintained in the regular course of the VA hospital's business.
 
 
 23
 Defendant further claims that admission of the accountability reports was an abuse of discretion because many of them were unsigned. However, there is no evidence in the record that suggests that the accountability reports required a signature. Nevertheless, government witnesses testified that they prepared the accountability reports labelled Exhibits 30 through 75 and, in the absence of testimony rebutting this evidence of authenticity, the District Court did not abuse its discretion in admitting the exhibits.
 
 
 24
 Defendant also contends that supporting documents were lost or removed during the course of the investigation while in the custody of the government. It is unclear whether defendant claims that the destruction of the vouchers violated his due process rights under the Fifth Amendment. Nonetheless, defendant could prevail on that claim only if he showed bad faith on the part of the government in destroying the supporting documentation. See United States v. Edge, 989 F.2d 871, 876 (6th Cir.1993). Defendant presented no evidence that suggested either that the government destroyed the missing documents or that the government destroyed the documents in bad faith. Moreover, there was testimony that tended to show that defendant himself destroyed the documents.
 
 
 25
 Therefore, we find that admission of Exhibits 30 through 75 was not an abuse of discretion; they were both relevant and authenticated.
 
 V. Testimony of Tracy McGhee
 
 26
 Next, defendant argues that the District Court improperly admitted the testimony of Tracy McGhee. We review the District Court's admission of Tracy McGhee's testimony for abuse of discretion. See United States v. Thomas, 74 F.3d 676, 679 (6th Cir.1996).
 
 
 27
 Defendant first claims that McGhee's activities with Worthen one and one-half years after the time period in the charged indictment were not relevant to the proceedings and thus should have been excluded. Defendant argues that McGhee provided no testimony that the money contained in the package was the money allegedly embezzled from the VA.
 
 
 28
 We reject defendant's argument that McGhee's testimony was not relevant to the proceedings at issue. Her testimony created the inference that defendant buried the money he allegedly embezzled from hospital accounts. This evidence is directly relevant to the embezzlement charges. Even though the money was not uncovered until a year and a half after the time period charged in the indictment, her testimony was relevant and probative on the issues of what defendant had done with the money he had received from the VA hospital, specifically whether defendant took the money for his own use or used it to purchase materials for the hospital.
 
 
 29
 Defendant then argues that even if McGhee's testimony regarding the package of money was relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.
 
 
 30
 Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." United States v. Bonds, 12 F.3d 540, 567 (6th Cir.1993) (quotations omitted). A "district court has broad discretion in balancing probative value against potential prejudicial impact." United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991).
 
 
 31
 We find that McGhee's testimony was highly probative on the issue of whether defendant converted VA hospital monies to his own use. Even though McGhee never testified that the monies in the package were embezzled monies, her testimony did raise that inference. The money was buried, suggesting defendant's attempt to conceal money obtained by illegitimate means, and was in one hundred dollar denominations, the form in which he requested his reimbursements from the VA hospital.
 
 
 32
 In addition, we cannot say that the admission of McGhee's testimony was unfair in the sense that it was likely to mislead and not aid or assist the jury in making a determination of whether defendant had embezzled monies from the VA hospital. Although her testimony was obviously harmful to the defense, the probative value of the evidence outweighed any risk of unfair prejudice. Thus, we find no abuse of discretion in the District Court's admission of her testimony.
 
 VI. The Amount of the Loss
 
 33
 Contending that the District Court erroneously computed the amount of the loss to the government flowing from his activities, defendant challenges the eleven-level enhancement of his base offense level under USSG § 2B1.1(b)(1)(L). For purposes of this section,
 
 
 34
 the loss need not be determined with precision. The court need only make a reasonable estimate of the loss given the available information.
 
 
 35
 USSG § 2B1.1, comment. (n. 3). We conclude that defendant has failed to carry the heavy burden of persuading this Court that the District Court's evaluation of the loss attributable to his fraudulent activities was an unreasonable estimate in light of the evidence presented at trial.
 
 
 36
 In sentencing the defendant, the District Court credited testimony that set the total loss at over $350,000: losses from defendant's false voucher scheme totaled $327,763, cash withdrawals from hospital accounts totaled $47,605, and money orders totaled $11,496. Claiming he can account for the monies he withdrew from the VA hospital's checking account, the monies he claimed for reimbursement, and the monies he received in the form of money orders, defendant asserts that there was no loss to the VA hospital.
 
 
 37
 We find that the District Court properly assessed the total amount of loss flowing from defendant's fraudulent activities. It is evident that the District Court carefully considered evidence regarding the nature and amounts of the fraudulent transactions before concluding that the testimony and evidence related to losses incurred by the VA hospital were admissible and attributable to defendant's conduct. For the reasons discussed in Part IV, we reject defendant's argument that those amounts that the agent cashier testified were "not attributable" to the defendant should be excluded from the VA hospital's loss. Moreover, defendant was unable to produce receipts supporting his contention that the money was spent for the benefit of the VA hospital. Finally, the District Court specifically rejected defendant's explanations discrediting its loss calculation and attributing the money in the duffel bag to his other businesses. Given the facts of record, the District Court's finding that the aggregate losses were in excess of $350,000 was not clearly erroneous.
 
 
 38
 Based on an offense level of 21, the District Court correctly concluded that the appropriate sentencing range prescribed by the Sentencing Guidelines was between thirty-seven and forty-six months. Because defendant's sentence of forty months is within this range, we find no error in the sentence imposed.
 
 VII. Conclusion
 
 39
 For the reasons stated, we affirm the District Court's refusal to disclose the second grand jury's proceedings, admission of Exhibits 1 through 75, admission of McGhee's testimony, and calculation of loss to the government.
 
 
 
 [1]
 There was testimony that defendant admitted to a number of trial witnesses that he destroyed the original vouchers
 
 
 [2]
 Defendant suggests that if no evidence was presented to the second grand jury or if only a summary presentation was made, then the superseding indictment may have been improperly returned. However, he concedes that if the second grand jury heard from witnesses and was given access to the grand jury transcripts, the superseding indictment was proper