**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marlon H. TRAMMELL, Defendant–
Appellant.**

No. 01–3027.

United States Court of Appeals,
Sixth Circuit.

Dec. 2, 2002.

Before NELSON, BOGGS, and NORRIS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant Marlon Trammell appeals from a jury verdict that found him guilty of possession with the intent to distribute crack cocaine, 21 U.S.C. § 841(a). He raises three issues on appeal: 1) ineffective assistance of trial counsel; 2) improper testimony by an FBI drug-trafficking expert; and 3) sufficiency of the evidence.

### I.

The drug-trafficking charge lodged against defendant stems from a search by the Mahoning Valley Drug Task Force of a Youngstown, Ohio apartment rented by William Ward. After monitoring the premises for some months, the officers obtained a search warrant. On July 18, 2000, they executed it. Detective John Kelty testified that he opened the screen door and announced the presence of police with a search warrant. According to Kelty and another officer, Jeff Allen, who carried the battering ram, they heard shuffling and running inside the house. Allen conceded that they did not wait after announcing their presence because of concern about their safety and the destruction of evidence.

Upon entry, Kelty indicated that he saw defendant trying to avoid the police. He went on, "I was concerned he may have a gun or something.... When I got into this area where I could see him, what I saw was his arm away [sic] from his waist in this motion, like he was tossing something, and then he doubled back and fell to the ground behind the dining room table that was there." When he went to the point "where his arm extended to," Kelty recovered "some money and a couple of plastic baggies that contained suspected crack cocaine." Testimony during trial established that the weight of crack cocaine found in the bags was 6.829 and 6.744 grams respectively.

Ward, who had entered into a plea agreement, testified that on July 18 he sold defendant two quarter-ounce bags of crack before the police arrived. He also denied leaving crack on the dining room floor.

Twenty-one-year FBI veteran Robert Fiatal testified as an expert on drug trafficking. He described his experience in these terms:

> Particularly in the area of drug investigations, I've probably either been the affiant or supervisor on hundreds of search warrants, over 100 wiretaps. Also I've been engaged in the handling of informants and sources on hundreds of occasions. Also I've operated informants in buy situations on hundreds of occasions. And I've been just about involved in every facet of drug investigation, or every technique used in drug investigations.

He also indicated that he had been qualified as an expert on three occasions in federal district court.

After presenting these qualifications, the Assistant United States Attorney sought to have Fiatal recognized as an expert "in the field of narcotics and narcotics investigation." The district court responded that it felt the scope "pretty broad" and indicated that he would decide on a question-by-question basis whether the witness would be permitted to testify. He also explained to the jury that expert witnesses were allowed to offer opinions but that "where a person is allowed to offer an opinion doesn't mean you are required to accept that opinion."

Fiatal then explained the difference between powder and crack cocaine. When he indicated that crack was more physically addictive, the judge interrupted and told the jury that "whether it's more addictive or not ... is not relevant to the question of whether this defendant knowingly possessed with the intent to distribute." The court then sustained an objection by defense counsel regarding the amounts in which crack is typically distributed. However, the court itself then framed the following question, "From your experience and training and observation, are those street level transactions, do they involve normal quantities in the street level transactions?" The witness responded that such transactions involved one-tenth of a gram. After further questioning about amounts, Fiatal concluded that the amounts allegedly possessed by defendant were not "in a personal use form because it has not been crunched down into the individual rock quantities for sale in dosage units for street sale." On cross-examination, he reiterated this opinion.

After a one-day trial, the jury returned a guilty verdict on the sole count of the indictment. Defendant was sentenced to 72 months of incarceration, four years of supervised release, and ordered to participate in a substance abuse program.

## II.

### 1. *Ineffective Assistance of Counsel*

Defendant alleges that his trial counsel rendered ineffective assistance in two respects: 1) by failing to file a motion to contest the search of Ward's apartment; and 2) by failing to challenge the testimony of the government's expert witness.

This court has expressed a longstanding preference not to entertain ineffective assistance claims on direct appeal. *See generally United States v. Brown*, 276 F.3d 211, 217 (6th Cir.2002) ("We do not address on direct appeal claims of ineffective assistance unless the record has been sufficiently developed to provide meaningful factual review.") (citing *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir.1997)). Ineffective assistance claims are therefore typically pursued "in a proper post-conviction proceeding under 28 U.S.C. § 2255." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990).

Despite this general preference, we find that the record in this case is sufficiently developed to permit review of counsel's performance. In order to prevail, defendant must jump the following hurdle:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it can-

not be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ First, plaintiff contends that his counsel was derelict in failing to file a motion to suppress the evidence seized in the search of the Ward apartment. As the record makes clear, however, defendant lacked standing to contest the search. In *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Court held that an overnight guest had a legitimate expectation of privacy in his host's home and thus could challenge the officers' entry into the home. *Olson,* 495 U.S. at 98. In *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), however, the Court qualified this holding somewhat. In *Carter,* which factually bears some resemblance to the case now before us, the Court held that an individual who was present in another's apartment for a few hours in order to process cocaine lacked standing to contest the search. *Carter,* 525 U.S. at 91 ("the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises").

This court parsed *Olson* and *Carter* in *United States v. Pollard,* 215 F.3d 643 (6th Cir.2000), when we considered the appeal of two defendants, Pollard and Rodriguez, who were arrested for drug dealing in a Memphis apartment leased by a third-par-

ty. The evidence showed that Pollard had known the lessee for several years, had spent the night there on occasion, and had left personal belongings on the premises. Rodriguez, however, had not met the lessee until the evening of the search. We held that Pollard, but not Rodriguez, had standing to. contest the search since the former had established the kind of expectation to privacy discussed by the Court in *Olson. Id.* at 647–48.

Based upon the record in the instant case, defendant's situation fits the facts of *Carter* closer than those of *Olson.* There is nothing in the record to indicate that he had ever passed a night in Ward's apartment, kept clothes there, or for that matter had done anything on the premises other than pursue his drug-trafficking career. Given that the defendant lacked standing to contest the search, counsel's failure to file a motion to suppress is not ineffective.

Defendant also contends that trial counsel should have challenged the testimony of expert witness Fiatal. The transcript reveals that, while counsel did not challenge his credentials, he did lodge several objections to questions as either irrelevant or overly broad. Moreover, as explained below, the district court properly permitted Fiatal to testify as an expert.

*2. Expert Witness*

■ Defendant argues that the district court abused its discretion in allowing FBI agent Fiatal to testify. In his view, the court should have made an explicit determination pursuant to Federal Rule of Evidence 702[1] that Fiatal did not qualify as an expert.

---

1. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

This court reviews the question of admissibility of expert testimony for an abuse of discretion. *See United States v. Harris*, 192 F.3d 580, 588 (6th Cir.1999). This court has permitted expert testimony "as to the methods and operations of street level drug dealers" in the past. *Id.* In *Harris*, we reasoned as follows:

> In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993), the Supreme Court held that Federal Rule of Evidence 702 placed a special obligation upon the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." And although *Daubert* was restricted by its facts to scientific testimony, this Circuit has broadly applied *Daubert's* relevance and reliability analysis to all evidence offered under Rule 702. Moreover, the Supreme Court, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999), recently broadened the *Daubert* analysis to specifically include "technical" as well as "other specialized knowledge," such as that possessed by Officer Snavely.

> We find this case analogous to [*United States v. Thomas*, 74 F.3d 676, 682 (6th Cir.1996)] where a police detective was permitted to testify as both a fact and an expert witness. In response to Thomas's argument that the detective's testimony about the usual methods and operations of drug traffickers was unnecessary, a panel of this court wrote, "Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." *Id.* at 682. We find that the district court did not abuse its discretion in allowing Officer Snavely's expert opinion testimony about the significance of Harris's observed behavior.

*Id.* at 588–89 (citations omitted).

In addition to arguing that Fiatal was not properly qualified, defendant also maintains that the district court should have found that the potential prejudice outweighed any probative value that his testimony might have. *See* Fed.R.Evid. 403 (permitting exclusion of otherwise relevant evidence if its introduction would be outweighed by "danger of unfair prejudice").

This argument need not detain us long. As the passages quoted earlier in this opinion make clear, the district court took a very active role while Fiatal was testifying, explicitly reining in overly broad questions and guarding against prejudice by giving the jury limiting instructions. Under the circumstances, there was no abuse of discretion.

### 3. Sufficiency of the Evidence

■ The standard of review for insufficient evidence claims is whether, after viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Defendant maintains that the evidence was insufficient for several reasons. First, no fingerprint evidence was introduced that linked him to the baggies of cocaine. Second, no drugs were found on his person. Mere proximity to drugs is not sufficient to prove intent to distribute. *See United States v. White*, 932 F.2d 588, 590 (6th Cir.1991).

The government responds by pointing out that two bags of cocaine were recovered near where an officer had seen defen-

dant make a throwing motion. Furthermore, Ward testified that defendant bought two bags of cocaine not long before the police arrived. While Ward may have had an interest in attributing the drugs to the defendant, the credibility determination as to whether to believe Ward rests with the jury. Finally, the expert opined that the amount recovered and its condition indicated that it was not for personal use. In sum, there was ample evidence for a rational juror to find guilt beyond a reasonable doubt.

### III.

The judgment of the district court is **affirmed.**