**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARTIN P. VENTURA,

    Defendant - Appellant.

No. 96-2148
(D.C. No. 95-CR-34-1)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **EBEL** and **LUCERO**, Circuit Judges.

Appellant Martin Ventura was convicted of one count of possession with intent to distribute 50 kilograms or more of marijuana and one count of conspiracy to do the same. See 18 U.S.C. §§ 841, 846. He appeals his conviction on the following three grounds: (1) the district court erred by excluding the testimony of a defense expert concerning the sentencing relief furnished to a cooperating witness under a plea agreement; (2) the district court erred by failing

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to either order the disclosure of the cooperating witness's presentence report ("PSR") to Ventura's counsel or to conduct an in camera examination of the PSR to determine if it contained any discoverable information; and (3) prosecutorial misconduct by the United States Attorney's Office for the District of New Mexico tainted the fairness of Ventura's trial, mandating dismissal of his indictment.

**I**

On January 6, 1995, George Holguin pulled up to the United States Border Patrol ("USBP") Checkpoint on New Mexico Highway 54 just north of Orogrande, New Mexico. Holguin consented to a search of the car he was driving which uncovered 162 bundles of marijuana weighing a total of 131 pounds. After he was arrested, Holguin informed USBP Agent Susan Sanchez that he was traveling with two other individuals who were also transporting narcotics. He described the cars they were driving, stated that one of the individuals was an Anglo male named "Dan" and the other an Hispanic male named "Martin," and added that the three had stayed at the Missile Inn in El Paso, Texas the night before. Appellant Martin Ventura and co-defendant Dan Johnson were eventually apprehended based on Holguin's description. Eighty-two pounds of marijuana were found in the car Johnson was driving. While no drugs were found in Ventura's car, a receipt from the Missile Inn was found, corroborating Holguin's statement.

On August 18, 1995, prior to his trial, Ventura filed a Motion in Limine to Permit Expert Testimony as to the Impact of Co-Defendant's Plea Agreement and the Sentencing Guidelines on Co-Defendant's Imprisonment Range and Potential Sentence. The district court denied Ventura's motion.

Ventura then filed a Motion for Production of George Holguin's Presentence Report Prepared by the U.S. Probation Office, or, in the alternative, that the court review the PSR in camera and disclose those portions deemed appropriate. The district court denied these motions as well, but placed the sealed PSR in the record.

At Ventura and Johnson's joint trial, Holguin was called as a government witness. Cross-examination regarding his criminal history brought out Holguin's prior convictions for residential burglary, driving while intoxicated, and marijuana possession. Holguin admitted that as a result of entering into the plea agreement, one of the counts against him was dropped, and he was told he would receive a seven-level reduction under the Sentencing Guidelines and the lowest sentence in the guideline range. Holguin also testified that his attorney had informed him that he had a "slight chance" of staying out of prison altogether as a result of the plea. Holguin's plea agreement was admitted into evidence and was published to the jury.

Neither defendant presented witnesses. At the conclusion of the government's case, both defendants moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29. The court granted Johnson's motion but denied Ventura's.

**II**

**A**

We review a trial court's determination of whether to admit expert testimony for abuse of discretion. United States v. Rice, 52 F.3d 843, 847 (10th Cir. 1995). The admission of expert testimony is governed by Federal Rule of Evidence 702 which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Such testimony "is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence." United States v. French, 12 F.3d 114, 116 (8th Cir. 1993).

The expert testimony requested by appellant does not meet this standard. A practicing criminal defense attorney's views on the incentive to lie that a plea agreement may give a cooperating accomplice does not explain any unclear, novel or unduly technical issues to the jury. "[I]t is clearly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant

-4-

in exchange for a lower sentence." Id. at 117. On cross-examination of Holguin, the defense attorney elicited ample information regarding his understanding of the plea agreement, allowing the jury to evaluate its impact on his credibility. The judge instructed the jury to view Holguin's testimony "with caution and weigh[] [it] with great care." R. Vol. V at 330. In her closing argument, the defense attorney repeatedly emphasized Holguin's incentives to fabricate his testimony. Because the credibility of witnesses is a determination for the jury to make, and because the jurors heard considerable testimony regarding the incentives created by the plea agreement, the trial court did not abuse its discretion in excluding this expert's testimony. See United States v. Thomas, 74 F.3d 676, 684 (6th Cir.), cert. denied, 116 S.Ct. 1558 (1996).

**B**

Appellant argues that the district court erred in refusing to disclose Holguin's PSR to the defense and in failing to conduct an in camera review of its contents to determine if it contained any impeachment information against Holguin.

Under the Jencks Act,

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b). PSRs may be discoverable under the Jencks Act. See

United States v. Sasser, 971 F.2d 470, 479 (10th Cir. 1992) (finding that because

PSRs contain a "defendant's version" of the facts constituting a "statement," a co-

defendant's PSR may fall under Jencks where it is in the hands of the

prosecutor).[1] Concerns about preserving the confidentiality of PSRs, however,

weigh against disclosure of the report to a third party other than defendants who

are the subjects of the report or their counsel. See Fed. R. Crim. P. 32(b)(6)(A)

(providing for disclosure of PSR to defendant subject of report, defendant's

counsel and prosecutor). In camera review by the trial court of a cooperating

witness's PSR to determine whether it contains any discoverable information

protects the witness's interest in confidentiality while preserving the defendant's

trial rights. See United States v. Figurski, 545 F.2d 389, 392 (4th Cir. 1976).

Other circuits that have addressed this issue have similarly concluded that a

defendant may be entitled to a witness's PSR if it is in the hands of the prosecutor

as distinguished from the probation officer, see, e.g., United States v. Trevino,

_____

[1]Sasser explicitly departed from United States v. Dingle, 546 F.2d 1378 (10th Cir. 1976), which had held that in camera review of a PSR was not required because PSRs were not discoverable under the Jencks Act. Sasser distinguished Dingle on the grounds that: (1) in Dingle the PSR was in the hands of the probation office, an arm of the court, not the prosecutor; and (2) Dingle's finding that PSRs did not fall under the Freedom of Information Act pre-dated the Supreme Court's decision to the contrary in United States Dep't of Justice v. Julian, 486 U.S. 1 (1988) (holding PSR must be released to defendant under FOIA). See Sasser, 971 F.2d at 480 & n.8.

556 F.2d 1265, 1271 & n.7 (5th Cir. 1977), or, in the alternative, have approved of in camera review of the report by the court and subsequent production of any impeaching material, see, e.g., United States v. Moore, 949 F.2d 68, 71-72 (2d Cir. 1991); United States v. DeVore, 839 F.2d 1330, 1332-33 (8th Cir. 1988); United States v. Anderson, 724 F.2d 596, 598 (7th Cir. 1984); Figurski, 545 F.2d at 392.

The district court should have reviewed Holguin's PSR in camera. Although the trial judge announced an intention to conduct such a review, it is unclear from the record whether he did so. The district court's conclusion is only reversible error, however, if we find it was prejudicial. See Sasser, 971 F.2d at 481. In light of the absence of a record of what occurred at the trial level, appellate review of the PSR is sufficient to protect defendant's rights. See Figurski, 545 F.2d at 392 (determining that PSR "contains nothing to exculpate defendant, and nothing [that] . . . would have added further support to the attack on the credibility of [the cooperator]," and therefore any error was harmless); cf. Sasser, 971 F.2d at 481 (notwithstanding district court review of witnesses' PSRs, appellate court reviews PSRs and concludes there was no reversible error). Upon reviewing Holguin's PSR, we find that it does not contain information not already available to the defense, and therefore find no reversible error.

## C

Appellant claims that the government's improper use of the district court's subpoena power under Fed. R. Crim. P. 17(a) warrants dismissal of the indictment against him, or, in the alternative, a remand for an evidentiary hearing on the extent of the government's misconduct.

Rule 17(a) provides:

A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.

The abuse of Rule 17 by the U.S. Attorney's Office in New Mexico came to light in November 1995, during proceedings in an unrelated case. After conducting an investigation, the U.S. Attorney sent a letter dated November 22, 1995 to all the judges in the district disclosing that government attorneys had issued Rule 17 subpoenas in order to compel witnesses to attend ex parte pre-trial interviews with the government. The letter stated that the attorneys had been informed that the practice was unauthorized. Eventually it was disclosed that the government issued at least 53 such subpoenas in eleven cases over the course of two and one-half years. See United States v. Villa-Chaparro, 115 F.3d 797, 804 (10th Cir.), cert. denied, 118 S.Ct. 326 (1997).

In a separate letter dated November 22, 1995, the U.S. Attorney disclosed that an improper subpoena had been issued in United States v. Martin Ventura, et

al. to George Holguin.  Subsequently, Ventura filed a Motion to Dismiss Based on Violations Arising from Rule 17 Abuse, and sought consolidation of cases presenting identical Rule 17 abuse before the chief judge of the district with suggested appointment of a neutral Special Master to study the practice.  The chief judge denied the request for consolidation by order dated February 21, 1996.  The district court judge presiding over Ventura's trial held joint hearings on the government's illegal use of subpoenas in Ventura and United States v. Villa-Chaparro, 94 Cr. No. 0752 (D.N.M.), another case over which he was presiding in which a similar motion had been made.  The judge denied the motions for dismissal or a new trial in both cases by order filed April 11, 1996, finding that "defendants have failed to establish prejudice from the government's improper use of the subpoenas."  R. Vol. I Doc. No. 157.  The judge also did not permit the defense to present evidence on the nature and extent of the practice district-wide, and he dismissed defendant's Order for the Government to Show Cause, which requested the imposition of sanctions.  We review the district court's denial of these motions for abuse of discretion.  United States v. Gabaldon, 91 F.3d 91, 93 (10th Cir. 1996).

In Villa-Chaparro, 115 F.3d at 804-05, this court recently affirmed the denial of Villa-Chaparro's motion.  Despite our concern about the government's

-9-

undeniably improper use of the court's power, we are similarly compelled to reject Ventura's claims for relief based on the facts before us.

Prosecutorial misconduct is not per se reversible error. United States v. Alexander, 849 F.2d 1293, 1296 (10th Cir. 1988). In evaluating a claim for prosecutorial misconduct, "[f]irst, we examine 'whether the conduct was, in fact, improper.' If we answer that question in the affirmative, 'we must then determine whether it warrants reversal.'" United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996) (quoting United States v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991)). "[I]t is only when such conduct can be said to have influenced the verdict that it becomes prejudicial." Alexander, 849 F.2d at 1296.

As the Villa-Chaparro court noted, the government's conduct was clearly improper. Villa-Chaparro, 115 F.3d at 804. We reject the government's suggestions in its brief on this appeal that "the impropriety was not self-evident." Appellee's Br. at 15. "There is no question that the government's action of obtaining blank trial subpoenas from the court clerk and of using them to compel witnesses to attend an interview . . . at a proceeding other than an authorized one [is] highly improper." United States v. Keen, 509 F.2d 1273, 1274 (6th Cir. 1975); see Villa-Chaparro, 115 F.3d at 804 ("Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials.") (citing United

States v. LaFuente, 991 F.2d 1406, 1409 (8th Cir. 1993)); United States v. Hedge, 462 F.2d 220, 222 (5th Cir. 1972); United States v. Standard Oil Co., 316 F.2d 884, 897 (7th Cir. 1963). We have found no opinion holding otherwise.

As the conduct was clearly improper, our inquiry turns to whether appellant has asserted a claim of prejudice warranting reversal. At the time he was subpoenaed, Holguin was already obligated by his plea agreement to speak to and cooperate with the government; thus, the improper subpoena did not force any such cooperation or compel the interview. Appellant has pointed to no other indication of prejudice arising out of the pre-trial contact prompted by the improper subpoena. Reversing a conviction where prejudice has not been shown is not a proper use of the court's supervisory power to sanction government misconduct. See Villa-Chaparro, 115 F.3d at 804-05 (citing United States v. Hasting, 461 U.S. 499, 506 (1983)). The district court did not abuse its discretion in denying Ventura's motion to dismiss the indictment.

We also deny Ventura's request that we remand and order an evidentiary hearing in the matter. In requesting a hearing on the district-wide use of the subpoenas, the appellant has failed to demonstrate either how the use of such subpoenas in other cases has prejudiced him or why case-by-case evaluation of the impact of the subpoenas is inadequate to protect the rights of individual defendants. We emphasize, however, as in Villa-Chaparro, that our holding is not

-11-

intended to signal our approval of the government's conduct. We urge the U.S. Attorney's Office and the Department of Justice to fully investigate this abuse of court rules by government attorneys. Cf. Hasting, 461 U.S. at 506 & n.5 (indicating that referral of prosecutorial misconduct to Department of Justice for investigation is more appropriate use of court's supervisory power than reversal of conviction). Should such abuses recur, we trust that district courts will administer appropriate remedies.

AFFIRM.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

-12-