*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-3181

WILLIAM SANDERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-00154—James Gwin, District Judge.

Argued: March 10, 2005

Decided and Filed: April 20, 2005

Before: MARTIN and GILMAN, Circuit Judges; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Linda H. Barr, ASSISTANT UNITED STATES ATTORNEY, Youngstown, Ohio, for Appellee. **ON BRIEF:** Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Linda H. Barr, ASSISTANT UNITED STATES ATTORNEY, Youngstown, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. William Sanders appeals his jury conviction for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1), and requests that this case be remanded for re-sentencing in light of *United States v. Booker*, – U.S. –, 125 S. Ct. 738 (2005), and *Shepard v. United States*, – U.S. –, 125 S. Ct. 1254 (2005). For the following reasons, Sanders's conviction is AFFIRMED but the case is REMANDED for re-sentencing.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I.**

Youngstown, Ohio, police officers Michael Brindisi and Paul Brown were on patrol at approximately 10:00 p.m. on December 20, 2002, when Officer Brindisi observed a vehicle—which he later identified as a silver and brown Pontiac Parisienne—nearly strike the front of their squad car. Officer Brindisi also observed the driver of the vehicle consuming some type of liquid from a can. As a result, Officer Brindisi turned the squad car around and began to follow the vehicle. After he activated the emergency lights and siren, the Pontiac accelerated and a chase ensued.

After briefly losing sight of the vehicle, Officer Brindisi spotted it in a back alley behind an apartment complex on a nearby street. When he shined a spotlight in its direction, he and Officer Brown observed an individual running from the passenger side and the driver apparently preparing to exit the vehicle. Officer Brindisi testified that the driver proceeded to exit the vehicle and look back at the officers, at which point a gun fell from his jacket that he picked up and placed back in his jacket. According to Officer Brindisi, the driver then began running away through back yards, and he chased after him on foot. The driver jumped a small fence surrounding a garden and then scaled a higher chain-link fence a short distance away. As the driver cleared the second fence, Officer Brindisi testified, the gun again fell from his jacket. At that point, the two men were approximately an arm's length from each other, though on opposite sides of the fence, and Officer Brindisi noted that the driver was dressed all in black, had braided hair and was wearing a skull cap. The driver left the gun on the ground and continued running. Officer Brindisi, unable to scale the second fence, yelled to Officer Brown and used his radio to notify other officers in the area about the pursuit. Officer Brindisi testified that he proceeded to retrieve the weapon that the driver had dropped and secured it in his patrol car. At trial, he described the weapon as a Hi-Point .40 caliber semi-automatic firearm loaded with five rounds of ammunition; one round was chambered and four rounds were in the magazine.

In response to Officer Brindisi's radio transmission, Officers Joseph Moran and Jason Simon responded to the scene and began looking for the driver. Officer Simon located defendant Sanders hiding inside a dumpster located on the property of a nearby local business. Sanders was handcuffed and transported to Officer Brindisi's patrol car. At trial, Officer Brindisi identified Sanders as the driver of the vehicle and the individual whom Officers Moran and Simon had apprehended.

Several other notable pieces of evidence were introduced at trial. First, Officer Brindisi testified about certain items that were discovered in and taken from the Pontiac—namely, a blue and black backpack containing an awl, a crow bar, a flashlight, a surgical mask and a winter cap, as well as a can of Budweiser beer and a honey dispenser filled with gasoline. A label affixed to the backpack read "William Birch" and listed an address, but Officer Brindisi testified that he never had any contact with a person by that name.

Second, Beverly Bryant testified on behalf of the United States that, in the summer of 2002, she sold her used Pontiac Parisienne to Sanders, who was her neighbor at the time. Bryant testified that Sanders wanted her to title the car in his girlfriend's name, but that Bryant refused because she wanted to "do it the right way." She filled out the seller's portion of the title and then gave it to Sanders; she did not see him fill out the buyer's portion.

Third, Agent Thomas Hopkins of the Bureau of Alcohol, Tobacco and Firearms testified for the United States that the Winchester .40 Smith and Wesson caliber ammunition that was found in the firearm that Sanders had allegedly dropped was manufactured by Winchester in Illinois and therefore traveled in interstate commerce. He also testified that the firearm itself was manufactured in Ohio and, therefore, did not travel in interstate commerce.

Sanders presented only one witness, Herb Rhoades, an investigator for the Ohio Bureau of Motor Vehicles, who testified that on the evening in question, Sanders's driver's license was under suspension.

Sanders moved for acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the prosecution's case and again at the close of the defense's case. The district court denied both motions and submitted the case to the jury, which returned a verdict of guilty. Sanders was sentenced to 188 months of imprisonment followed by three years of supervised release. This timely appeal followed.

## II.

### A. *Evidentiary Rulings*

The first issue that Sanders has raised in this appeal concerns the propriety of the district court's admission of two categories of evidence. The first category consists of the backpack and its contents—an awl, a crowbar, a flashlight, a surgical mask and a winter cap—that the police discovered in the Pontiac Parisienne, along with Officer Brindisi's testimony regarding those items. The second category consists of Beverly Bryant's testimony that, approximately six months prior to the alleged crime, she sold her used Pontiac Parisienne to Sanders, who indicated his preference that the car be titled in his girlfriend's name instead of his own.

Sanders concedes that his trial counsel failed to object to the admission of this evidence at trial and that, as a result, we may grant relief on this ground only if we find plain error. *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004). Plain error exists where there is an error that is plain, that affects the defendant's substantial rights and that, in our discretionary view, seriously affects the fundamental fairness, integrity or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466 (1997) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Sanders argues that the district court's admission of the backpack evidence and Bryant's testimony constituted error for two alternative reasons: (1) the evidence was irrelevant; and (2) even if relevant, it was unfairly prejudicial. We disagree on both fronts.

Evidence is "relevant" under Rule 401 when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 provides that evidence that is not relevant within the meaning of Rule 401 is inadmissible. Fed. R. Evid. 402. Pursuant to 18 U.S.C. § 922, it is unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). To convict a defendant under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition had traveled in or affected interstate commerce. *United States v. Layne*, 192 F.3d 556, 571-72 (6th Cir. 1999). The parties had stipulated that Sanders had a previous felony conviction, thereby satisfying the first element, and Sanders effectively concedes that Agent Hopkins's trial testimony was sufficient to establish the third element. Sanders's argument, therefore, focuses upon the second element—whether he knowingly possessed the ammunition. He contends that neither the backpack evidence nor Bryant's testimony was relevant to the issue of whether he possessed any ammunition and, therefore, each category of evidence was inadmissible pursuant to Rule 402.

The United States offers several reasons why, in its view, the backpack evidence was relevant to the case, only one of which we find persuasive. In *United States v. Hatfield*, 815 F.2d 1068, 1073 (6th Cir. 1987), the defendant was prosecuted for being a felon in possession of a firearm

in violation of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 1202(a)(1). The trial court admitted certain items that were consistent with burglary tools, which the police had seized during a search that also recovered the firearm in question. This court affirmed the admission of that evidence, reasoning that the discovery of burglary tools in the van was probative of the defendant's "knowledge of the presence of the gun, which could be considered a tool of the burglary trade and useful in protecting ill-gotten booty." 815 F.2d at 1073; *see also id.* at 1072 (citing *United States v. Taylor*, 728 F.2d 864 (7th Cir. 1984) (holding that evidence of a defendant's possession of cocaine, jewelry, cash and merchandise lacking identification was admissible to establish the defendant's motive for illegally possessing an unregistered firearm)). In light of *Hatfield*, we hold that the backpack and its contents, along with Officer Brindisi's testimony about that evidence, were all relevant to the case because they were probative of Sanders's knowing possession of the firearm and the ammunition it contained, given the recognized connection between firearms and items consistent with burglary tools.

With respect to Bryant's testimony about the sale of her Pontiac Parisienne to Sanders, the United States contends that it was relevant because it established that the person who had fled the Pontiac was actually Sanders, who was found hiding in a dumpster a short distance away. Although Officer Brindisi's testimony also established that Sanders was the same individual whom he saw flee the vehicle and drop a firearm twice, Bryant's testimony corroborated his account by linking Sanders to the Pontiac, and her testimony would have been especially significant in the event that the jury disbelieved Officer Brindisi. Therefore, we hold that Bryant's testimony was relevant within the meaning of Rule 401.

In the alternative, Sanders argues that, even if relevant, the backpack evidence and Bryant's testimony should have been excluded under Rule 403 because the probative value of each was "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. He maintains that the backpack evidence was unfairly prejudicial because it implied that Sanders had used the contents of the backpack, or intended to use them, as burglary tools, and that Bryant's testimony concerning his purchase of her Pontiac Parisienne was unfairly prejudicial because it implied that there was something suspicious or illegal about his request that the car be titled in his girlfriend's name. These arguments are unpersuasive.

First, Sanders's Rule 403 challenge to the admission of the backpack evidence is untenable in light of *Hatfield*. *See* 815 F.2d at 1073 (holding in an analogous situation that "although the burglary evidence was likely prejudicial, . . . [the defendant] has failed to demonstrate that [its] probative value . . . was *substantially* outweighed by the prejudicial effect, as is required by Rule 403") (citations omitted) (emphasis in original). Second, a review of the record indicates that Bryant's reference to Sanders's request that the car be titled in his girlfriend's name was made merely in passing and was largely inconsequential to the case, thereby rendering the risk of unfair prejudice extremely slight. Moreover, Sanders's counsel was able to downplay the potential risk of unfair prejudice with respect to both the backpack evidence and Bryant's testimony on cross-examination of the United States's witnesses and in closing argument.

For these reasons, we hold that the district court committed no error—let alone plain error—in admitting backpack evidence and Bryant's testimony about the sale of her Pontiac Parisienne to Sanders.

## B. *Ineffective Assistance of Counsel*

Sanders next argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to object to the admission of the backpack evidence and/or Bryant's testimony, and by failing to call an expert witness to testify about the value—or lack thereof—of Officer Brindisi's eyewitness testimony. As an initial matter, Sanders's trial counsel's failure to

object to the admission of the backpack evidence or Bryant's testimony cannot rise to the level of ineffective assistance because, as discussed above, that evidence was admissible in any event. *See Hough v. Anderson*, 272 F.3d 878, 897 (7th Cir. 2001) ("If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted.").

The same cannot be said, however, about the claim concerning counsel's failure to call an expert witness. Nevertheless, that claim is not sufficiently developed at this stage to permit resolution. Sanders acknowledges that, "as a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)); *see also Massaro v. United States*, 538 U.S. 500, 504-05 (2003) ("In light of the way our system has developed, in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."). *But see Wunder*, 919 F.2d at 37 (explaining that where "the record is adequate to assess the merits of the defendant's allegations, some courts will consider them"). There is no reason to depart from this general rule here, as the present record contains no evidence whatsoever concerning Sanders's trial counsel's reasons for not calling an expert witness to testify about the value of Officer Brindisi's eyewitness testimony, nor does it permit a thorough evaluation of the prejudice, if any, resulting from this alleged shortcoming. Therefore, should Sanders wish to pursue this claim, he should do so by way of a collateral proceeding pursuant to 28 U.S.C. § 2255.

## C. *Sufficiency of the Evidence*

Sanders's final challenge to his conviction is that the evidence adduced at trial was insufficient to convict him of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). As discussed, to convict a defendant under section 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition had traveled in or affected interstate commerce. *Layne*, 192 F.3d at 571-72. Sanders concedes that the United States produced sufficient evidence to prove the first and third elements, but maintains that there was insufficient proof that he possessed the ammunition.

In assessing the sufficiency of evidence supporting a conviction, "we do not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). "Instead, we determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The crux of Sanders's argument is that Officer Brindisi's testimony was the only evidence that he possessed the firearm (and, hence, the ammunition it contained), and that such testimony was insufficient to prove the element of possession beyond a reasonable doubt. As stated, Officer Brindisi testified that he saw Sanders exit the Pontiac Parisienne following the car chase, at which point a gun fell from Sanders's jacket that Sanders picked up and placed back in his jacket. Officer Brindisi further testified that as he chased Sanders on foot, he observed the gun again fall from

Sanders's jacket as he climbed over a fence. This time, according to Officer Brindisi, Sanders did not stop to retrieve the gun and instead kept running. Officer Brindisi, unable to clear that fence, proceeded to retrieve the gun and discovered that it was loaded with the ammunition in question. This testimony alone, if believed, is sufficient evidence on which the jury could have concluded beyond a reasonable doubt that Sanders possessed the ammunition. Sanders argues that Officer Brindisi's testimony was uncorroborated and that certain discrepancies in his story were elicited on cross-examination, but these considerations are irrelevant to the sufficiency of the evidence analysis because they improperly ask us to weigh the evidence or to assess Officer Brindisi's credibility. *See Davis*, 177 F.3d at 558. Therefore, we hold that sufficient evidence supports Sanders's conviction.

## D.  *Sentencing Issues*

Although Sanders's principal appellate brief did not raise any challenges to his sentence, his appellate counsel subsequently requested that we remand this case for re-sentencing in light of two recent United States Supreme Court opinions: *Booker* and *Shepard*. As both issues were raised for the first time on appeal, plain error review applies. *DeJohn*, 368 F.3d at 540.

### 1.  *Remand for Re-Sentencing Under* Booker

Sanders advances two arguments in support of his request for re-sentencing under *Booker*: first, that he suffered a Sixth Amendment violation when the district court sentenced him under the Armed Career Criminal Act without a jury determination that he was the person convicted of the predicate offenses alleged or that the predicate offenses were committed on occasions different from one another; and second, that the district court committed plain error by sentencing him under the pre-*Booker* regime in which the Guidelines were mandatory rather than advisory.

We agree that the case must be remanded for re-sentencing because the district court committed what we now know to be plain error by sentencing Sanders using the Guidelines in a mandatory, rather than advisory, fashion. *See, e.g., United States v. Barnett*, 398 F.3d 516, 525-30 (6th Cir. 2005). The case for remand is particularly strong here given that the district court imposed a sentence at the low end of the Guidelines range. *See, e.g., United States v. Hamm*, 400 F.3d 336, 340 (6th Cir. 2005). In light of our decision to remand for this reason, we need not address Sanders's alternative constitutional argument.

### 2.  *Remand for Re-Sentencing Under* Shepard

Sanders also argues that his sentence was imposed in violation of *Shepard* because the district court found him to be an armed career criminal within the meaning of United States Sentencing Guideline 4B1.4 without sufficient proof that his prior offenses constituted violent felonies or serious drug offenses within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e).

The Armed Career Criminal Act, which mandates a minimum fifteen-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies, "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle." *Shepard*, 125 S. Ct. at 1257. The Court had previously held, in *Taylor v. United States*, 495 U.S. 575 (1990), that a court sentencing under the Act "could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after *trial* was for generic burglary." *Shepard*, 125 S. Ct. at 1257 (discussing *Taylor*) (emphasis added). The question presented in *Shepard* was "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier *guilty plea* necessarily admitted, and supported a conviction for, generic burglary." *Id.* (emphasis added). The Court concluded "that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document,

written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.*; *see also id.* at 1263 ("We hold that enquiry under the [Act] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."). Although both *Shepard* and *Taylor* involved prior burglaries, the Court's holdings in those cases "cover[] other predicate . . . offenses" under the Act as well. *Id.* at 1257 n.2.

We are unable to determine from the present record on appeal whether the district court complied with the requirements of *Shepard* and *Taylor* in concluding that Sanders's prior convictions constituted violent felonies within the meaning of the Act. The transcript of the sentencing hearing indicates that the district court found that Sanders "ha[d] been previously convicted of three violent felonies, specifically, burglary in Mahoning County Common Pleas case number 80CR421, robbery in Trumbull County Common Pleas case number 81CR11, and aggravated robbery in Trumbull County Common Pleas case number 83CR359," but the record fails to indicate on what basis the district court concluded that these prior convictions were for qualifying offenses.

The only documentation in the record on appeal concerning these prior convictions is found in the presentence report prepared by the probation officer. The district court never explicitly indicated, however, that it was relying upon that report in determining whether Sanders was an armed career criminal. In any event, even if a presentence report could generally satisfy the requirements of *Shepard* and *Taylor*, which is doubtful, the presentence report in this case clearly does not; it fails to include even the most basic information about Sanders's prior convictions—such as: (1) for each of the three offenses, what statute Sanders was convicted of violating;[1] and (2) whether the respective prior convictions were resolved by trial or by plea agreement (which makes it impossible for us to determine whether this issue is more appropriately governed by *Taylor* or *Shepard*). Moreover, the report appears to give conflicting information as to whether in case number 80CR421 Sanders was convicted of the offense of robbery or burglary.

We therefore instruct the district court that, on remand, in addition to re-sentencing Sanders by treating the Guidelines as advisory pursuant to *Booker*, it should either explain the basis for its prior conclusion that Sanders had previously been convicted of three violent felonies within the meaning of the Armed Career Criminal Act (so that, if necessary, we may determine in a later appeal whether the requirements of *Shepard* and *Taylor* were satisfied) or re-sentence Sanders anew in accordance with *Shepard*, *Taylor*, this opinion and any other applicable precedent.

## III.

For these reasons, Sanders's conviction is AFFIRMED but his sentence is VACATED and the case is REMANDED for re-sentencing.

---

[1]Although the presentence report indicates the statute of conviction for two of the offenses, it does not indicate the statute of conviction for the third offense.