**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0848n.06
Filed: November 20, 2006

**No. 04-6091**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA
          Plaintiff-Appellee,

v.

DEMARCUS FIFER
          Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

**OPINION**

_____/

**Before: BATCHELDER and MOORE, Circuit Judges; COHN [*], District Judge**

    **AVERN COHN, District Judge**. This is a criminal case. Defendant-Appellant Demarcus Fifer (Fifer) appeals his jury conviction of felon in possession of a firearm,18 U.S.C. § 922(g), and his conviction of possession with intent to distribute approximately 13 grams of cocaine base, 21 U.S.C. § 841(a)(1). Fifer, by way of counsel, presents six issues on appeal: (A) whether the district court erred in denying his request for a continuance on his motion to suppress; (B)whether the district court erred in allowing a Government fact witness to also testify as an expert witness; (C&D) whether the district court erred in allowing Fifer's prior counsel to testify about statements Fifer made during a proffer session with law enforcement, and whether

_____

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

the district court erred in allowing a FBI For**m 302 (a summary created by law enforcement of Fifer's statements made during the proffer session) to be admitted into evidence; (E) whether the district court's instructions to the jury concerning the FBI Form 302 were erroneous; and (F) whether the district court erred in refusing to hold a post-conviction hearing at which a juror could have testified about alleged confusion about the district court's instructions regarding the FBI Form 302.

Fifer independently filed a *pro se* brief, in which he raises two additional challenges to his conviction. Fifer argues that (G) the district court improperly found him to be a "career offender" pursuant to U.S.S.G. § 4B1.1, in violation of *United States v. Shepard*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990); and that (H) the district court viewed the sentencing guidelines as mandatory, in violation of *United States v. Booker*, 542 U.S. 220 (2005).

For the reasons that follow, Fifer's conviction will be affirmed, and his sentence will be vacated and remanded for resentencing.

## I. BACKGROUND

Fifer was charged in a two-count indictment. Count One, felon in possession of a firearm, stems from events that occurred on May 11, 2001. Count Two, possession with intent to distribute approximately thirteen grams of cocaine base, stems from events that occurred on May 30, 2001. On May 11, 2001, Shelby County Sheriff's Department Deputy Kevin Helms (Helms) and Deputy C. Cunningham (Cunningham) were on foot patrol monitoring for narcotics transactions in the area of Sumner Wells and Piney Woods Streets in Memphis, Tennessee.

After witnessing what they believed to be a drug transaction, Helms and Cunningham approached two African American men, one standing outside of a red pick-up truck, and the other sitting inside of the truck. Helms and Cunningham attempted to arrest the two men. Helms reached into the truck to turn the engine off, but the driver sped away. Shortly thereafter, the truck was found abandoned at the end of a dead-end street. Helms testified at the trial that he found a 9mm Jennings pistol lying on the floorboard of the truck. He further testified that after approximately ten days to two weeks of investigation in which he canvassed the neighborhood and spoke with locals, he learned that a man named Fifer matched the description of the truck driver. Helms gave this name to his supervisor who then compiled a photo lineup which included Fifer's picture. Helms picked Fifer's picture out of the lineup, and a warrant for Fifer's arrest was issued based on this identification.

On May 30, 2001, officers observed Fifer enter apartment three at 3523 Frankie Carroll (or Carolyn) Drive in Memphis. He was arrested upon his departure from the apartment. Helms testified at trial that Fifer was in possession of a white rock substance and a small amount of marijuana in a clear bag when he was arrested. Following Fifer's arrest, officers searched the apartment and found a box matching the 9mm pistol collected from the abandoned red pickup truck, drug paraphernalia, and papers in Fifer's name.

On July 24, 2002, Fifer was indicted by a federal grand jury. Prior to trial, Fifer and his then attorney, James V. Ball (Ball) submitted a proffer letter signed by himself and Fifer which stipulated the following on page one, paragraph three:

> [T]he government may use (a) information derived directly or indirectly from the meeting for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used in any prosecution of your client by the government, and (b)

3

statements made by you or your client at the meeting and subsequent meetings as well as all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should your client testify, or to rebut any evidence, argument or representations offered by or on behalf of your client in the government's case-in-chief in connection with the trial and/or at sentencing, should any prosecution of your client be undertaken.

The proffer letter further stated on page two, paragraph three:

[I]f the government should ever conclude that your client has knowingly withheld material information from the government or otherwise has not been completely truthful and candid, the government may use against your client for any purpose (including sentencing) any statements made or other information provided by you or your client during the meeting.

Fifer gave an oral statement to the Government during the proffer session. He allegedly said he was the driver of the red truck on May 11, 2001. Law enforcement officers documented Fifer's statement of admission on a FBI Form 302. The FBI Form 302 includes a line on which to mark the "date of transcription," as well as a signature line for the person who completed the document. The FBI Form 302 does not include a line for the person whose statement was taken to sign or otherwise verify its accuracy.

Due to health reasons, Ball withdrew as Fifer's counsel and was replaced by Robert Irby (Irby). On December 17, 2003, Fifer filed a "Motion to Suppress a Suggestive Pretrial Identification," and on January 6, 2004, Fifer filed an "Amended Motion to Suppress a Suggestive Pretrial Identification" (amended motion to suppress). The amended motion to suppress was never heard on the merits, because the district court denied Fifer's request for a continuance on January 22, 2004, and Fifer thereafter withdrew the amended motion to suppress.

A jury trial commenced on February 3, 2004. During the trial the Government called Ball to testify about Fifer's proffer statement and the proffer letter. Fifer objected to Ball's testimony

on the basis of Fed. R. Evid. 403, 408, and 410, but was overruled. The district court also admitted the FBI Form 302, after overruling similar objections by Fifer.

Additionally, the district court allowed one of the arresting officers, Deputy Reginald Hubbard (Hubbard) to testify as a fact witness as well as an expert witness in the field of narcotics trafficking and investigations. A cautionary instruction regarding how much weight to give each type of testimony was given to the jury.

During deliberations, the jury sent the district court a question concerning the FBI Form 302. The jury asked: "Is Fifer admitting to the events in Exhibit 42 [the FBI Form 302], even without his signature on this exhibit?" The district court heard arguments by both parties, and rejected Fifer's request that it include in its answer a statement that the FBI Form 302 was not a transcript of an interview with Fifer. The district court responded to jury's question by stating:

> Exhibit 42 [the FBI Form 302] has been admitted into evidence as the summary of an oral statement that defendant is alleged to have made. You, the members of the jury, must determine from all of the evidence admitted in this case whether the statement was made and whether, if you determine it was made, it was truthful and accurate. You are the sole finders of fact in this case.

Deliberations continued until February 6, 2006, when the jury returned a guilty verdict as to Counts One and Two. On August 19, 2004, Fifer was sentenced to 120 months custody on Count One, and 292 months custody on Count Two; with the sentences to be served concurrently. Additionally, Fifer was found to be a "career offender" pursuant to U.S.S.G. § 4B1.1.

After the trial, in February, 2004, Fifer's attorney Irby stated in a motion for new trial that he was approached by a man who identified himself as Lewis Brown (Brown). Brown had served on Fifer's jury. Brown asked Irby to explain the meaning of the district court's response

5

to the jury's question concerning the FBI Form 302. Brown allegedly stated that seven or eight persons jurors believed that the FBI Form 302 was a transcript, and that they had to believe it despite their desire not to do so. Brown allegedly stated that had he and two or three other jurors known that the FBI Form 302 was a summary of someone else's recollection of an interview with Fifer, that they would have voted "not guilty." Fifer included in his motion for new trial an offer of proof on the issue of jury confusion as a result of the admission into evidence of the FBI Form 302. Fifer requested leave to either obtain an affidavit from Brown or subpoena him to testify. The district court denied Fifer's motion for new trial on May 13, 2004. Fifer filed a timely notice of appeal. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

### A. Whether the District Court Erred in Denying Fifer's Request for a Continuance of the Hearing on his Amended Motion to Suppress.

#### 1. Standard of Review

This Court reviews issues relating to denials for continuances under an abuse of discretion standard. *United States v. Gallo*, 763 F.2d 1504, 1523 (6th Cir. 1985).

#### 2. Analysis

Fifer argues that the district court abused its discretion by denying his motion for a continuance of the suppression hearing. Fifer says that Helms' identification of him was tainted by the way in which he obtained Fifer's name, and moreover, Helms already knew who Fifer was before picking his photograph out of the lineup. Fifer says that he needed more time to produce witnesses to challenge the validity of Helms' identification.

The Government contends that the district court did not abuse its discretion in denying Fifer's motion for a continuance, which was made at the suppression hearing. The Government points out that Fifer failed to present any information concerning the identity of witnesses, whether they were willing to testify, and whether they would provide substantial favorable evidence on Fifer's behalf. Moreover, the Government says that the motion for a continuance was not timely filed. Finally, the Government contends that Fifer did not suffer any prejudice from the denial because he ultimately withdrew the amended motion to suppress.

Whether to grant a motion to continue is within the broad discretion of the district court. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). The denial of a motion for a continuance will be found to be an abuse of discretion only when the court exhibits "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay." *Id*. at 11-12 (internal quotation marks omitted); *see also*, *United States v. Crossley*, 224 F.3d 847, 854-855 (6th Cir. 2000). To justify a continuance to secure the appearance of a witness, the moving party must establish that the witness will give substantial favorable evidence and that the witness is available and willing to testify. *United States v. Boyd*, 620 F.2d 129 (6th Cir. 1980). In *Bennet v. Scroggy*, 793 F.2d 772 (6th Cir. 1986), we considered the following factors in determining whether a district court deprived a defendant of his Sixth Amendment right to compulsory process when it denied defendant's motion for a continuance to allow him more time to locate a witness: 1) the diligence of the defense in interviewing witnesses and procuring their presence, 2) the probability of procuring their testimony within a reasonable time, 3) the specificity with which the defense is able to describe their expected knowledge or testimony, 4) the degree to which such testimony is expected to be favorable to the accused; and 5) the unique or cumulative

7

nature of the testimony.  *Id*. at 774.

Here, Fifer failed to provide the district court with any information to support his motion for a continuance.  At no time did Fifer provide the district court with information regarding the identities of witnesses, their proposed testimony, and how such testimony would benefit him.  Nor did Fifer explain his attempts, if any, to procure such witnesses.  In his motion for a continuance, Fifer merely stated: "The defendant is having difficulty locating a couple of witnesses who would be needed for such a hearing." [1]  Considering Fifer's failure to support his motion to suppress, the district court did not abuse its discretion in denying Fifer his motion for a continuance for lack of good cause.

We further note that the district court never reached the merits of Fifer's amended motion to suppress because Fifer himself ultimately withdrew the motion after his motion for a continuance was denied.  Accordingly, Fifer has not shown that the district court's decision caused him to suffer prejudice.

**B.  Whether the District Court Erred in Allowing a Government Fact Witness to Testify as an Expert Witness.**

1.  Standard of Review

A district court's admission of expert testimony will not be disturbed unless the district court abused its discretion. *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001).

2.  Analysis

---

[1]  It is only now, on appeal, that Fifer says that he can produce a witness to testify that Helms knew of Fifer prior to choosing his photograph out of the line-up.  In order to consider this on appeal, this Court would need to look outside the record available to the district court. Normally we do not address issues that were not raised for the first time before the district court, and we decline to do so here. *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993).

Fifer argues that the district court erred in allowing Hubbard, one of the police officers who arrested Fifer, to testify as both a fact and expert witness because (1) Hubbard did not demonstrate sufficient uniqueness as to his testimony; (2) the subject of Hubbard's testimony was not the sort that would require the testimony of an expert in order to help the jury decide the issues presented; and (3) allowing Hubbard to testify as both a fact and an expert witness gave him excessive credibility with the jury, which resulted in prejudice to Fifer.

The Government argues that police officers are allowed to testify as expert witnesses about criminal activity since their knowledge of such activity is generally beyond the understanding of the average layperson. Additionally, the government argues that Hubbard did not possess "excessive credibility" because the district court gave a cautionary instruction to the jury.

Police officers may testify as expert witnesses about criminal activity where knowledge of such activity is generally beyond the understanding of the average layperson. *United States v. Thomas*, 74 F. 3d 676, 682 (6th Cir. 1996). Expert testimony is appropriate where drugs are involved, because without expert testimony, the average juror is unlikely to understand, "the significance of drug paraphernalia, quantities, and prices, or appreciate the difference between 'street level' drug dealers and other types of distribution operations." *Id.*; *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990). Furthermore, we held in *Thomas* that expert testimony by a

police officer who also testifies as a fact witness is not unfairly prejudicial, particularly when the district court provides a cautionary instruction. 74 F.3d at 683.[2]

The district court did not err in qualifying Hubbard as an expert in narcotics investigations and trafficking, although he testified as a fact witness regarding Fifer's arrest. Hubbard's significant experience investigating persons who buy and sell narcotics, and his familiarity with Shelby County and West Tennessee methods of distribution of cocaine and other narcotics is precisely the sort of knowledge about criminal activity that is outside the knowledge of the average juror. Moreover, any "excessive credibility" Hubbard might have possessed as a dual witness was negated by the district court's cautionary instruction to the jury regarding the proper weight to give each type of testimony.

**C. and D. Whether the District Court Erred in Allowing Fifer's Prior Counsel to Testify about Fifer's Statements during the Proffer Session, and Whether the District Court Erred in Allowing The FBI Form 302 to be Admitted into Evidence.**

1. Standard of Review

A district court's ruling regarding an evidentiary matter will not be reversed absent a clear showing of abuse of discretion. *United States v. Phillips*, 888 F.2d 38, 40 (6th Cir. 1989). In

---

[2]  In *Thomas*, we explained that,

> [a]lthough the Government should exercise caution when using the same officer as an expert and a fact witness, we refuse to adopt a per se prohibition of this practice. We note that both the district court and the prosecutor should take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give proper weight to each type of testimony.

74 F.3d at 683.

reviewing the district court's Fed. R. Evid. 403[1] rulings, the appellate court must view the

evidence in the light most favorable to its proponent, maximizing its probative value and

minimizing its prejudicial effect. *United States v. Moore*, 917 F.2d 215, 233 (6th Cir. 1990).

### 2. Analysis

Fifer argues that the admission of Ball's testimony regarding Fifer's proffer, and the

admission of the FBI Form 302 which summarizes Fifer's statements allegedly made during the

proffer session, violates Fed. R. Evid. 403 because it was unfairly prejudicial and greatly

outweighed any probative value it might have had. Fifer contends that the prejudicial effect of

Ball's testimony and the admission of the FBI Form 302 was overwhelming and prevented the

jury from fairly considering his theory of the case. Second, Fifer argues that the admission of

---

[1] **Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Ball's testimony and the FBI Form 302 violates Fed. R. Evid. 408[4] and Fed. R. Evid. 410[5]

because this evidence was generated during negotiations that were essential parts of plea

bargaining with a prosecutor and law enforcement agents.

The Government argues that no Fed. R. Evid. 403 violation occurred because Fifer's

defense was adversely affected by the legitimate probative force of the evidence. Moreover, the

Government argues that no violation of Fed. R. Evid. 408 or 410 occurred because Fifer was

---

[4] **Rule 408. Compromise and Offers to Compromise:** Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[5] **Rule 410. Inadmissibility of Pleas, Plea Discussion, and Related Statements:** Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

    **(1)** a plea of guilty which was later withdrawn;
    **(2)** a plea of nolo contendere;
    **(3)** any statement made in the course of any proceedings under Rule 11 of the Federal

    Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
    **(4)** any statement made in the course of plea discussions with an attorney for the

    prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

represented by counsel and voluntarily waived any objections by knowingly and voluntarily signing the proffer letter.

A Fed. R. Evid. 403 violation does not occur when a defendant's case is adversely affected by the legitimate probative force of the evidence; rather, it occurs only when prejudicial evidence "tends to suggest [a] decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Evidence that is prejudicial only in that it paints the defendant in a bad light, but does not confuse or mislead the jury, is not unfairly prejudicial. *United States v. Logan*, 250 F. 3d 350, 368 (6th Cir. 2001). Moreover, absent evidence that a waiver is unknowing or involuntary, defendants may waive Fed. R. Evid. 408 and 410 objections implicitly and explicitly during plea bargaining. *See, e.g., United States v. Mezzanato*, 513 U.S. 196, 200 (1995).

The district court did not abuse its discretion by allowing Ball to testify about the proffer session or proffer letter, or in admitting FBI Form 302. First, Fifer has not argued that the testimony or admission of the contents of the FBI Form 302 suggest a decision on an improper basis. Instead Fifer merely disagrees with the admission of his own statements because they are damaging to his defense. Second, Fifer waived his objections under Fed. R. Evid. 408 and 410 by signing the proffer letter which stipulated that the Government may use statements made during the proffer session to "[r]ebut any evidence, argument or representations offered by or on behalf of your client in the Government's case-in-chief in connection with the trial and/or at sentencing, should any prosecution of your client be undertaken." P. 1, ¶ 3. Ball's testimony and the contents of the FBI Form 302 were admissible to rebut Fifer's argument that Helms misidentified him as the driver of the red truck. Finally, Fifer freely signed the proffer letter in

the presence of his attorney, and has not argued that doing so was unknowing or involuntary.

### E. Whether the District Court's Instructions to the Jury Concerning the FBI Form 302 were Erroneous.

#### 1. Standard of Review

This circuit has set a high standard for the reversal of a conviction on grounds of improper jury instructions. *United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir. 1995). We review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. A reviewing court may reverse a judgment only if the instructions, viewed as a whole, were misleading and prejudicial. *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993).

Specifically, we review for abuse of discretion the trial court's supplementary instruction given to a deliberating jury that has asked for a clarification of law. *See United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989). The propriety of such an instruction must be measured by whether it "fairly responds to the jury's inquiry without creating ... prejudice." *United States v. Giacalone*, 588 F.2d 1158, 1166 (6th Cir. 1978).

#### 2. Analysis

Fifer argues that the district court's answer to the jury's question regarding the FBI Form 302 was confusing, misleading, and prejudicial because it allowed the jury to draw conclusions about the FBI Form 302 that were not based in fact. Pointing to Brown's alleged statements to Irby, Fifer argues that at least part of the reason why the jury found him guilty was because some jurors believed that the FBI Form 302 was a transcript of Fifer's statement. Fifer argues that the judge failed to explain to the jury that the FBI Form 302 contained a summary of someone else's

14

recollection of what Fifer said during the proffer session, and not Fifer's actual words.

The Government argues that the district court's answer was not confusing, misleading, or prejudicial. The Government points out that Fifer had no objections to the final jury instructions, and that the reason why the district court did not inform the jury that the FBI Form 302 was not a transcript was because it believed that such a statement would be inaccurate. The district court explained to the attorneys that it found that FBI Form 302 was in fact a type of transcript – a summary of Fifer's statements during the proffer session.

Fifer's arguments are without merit for several reasons. First, it is not clear whether the jury was in fact confused about whether the FBI Form 302 was a transcript, because they did not ask whether the FBI Form 302 was a transcript. Instead, they asked: "Is Fifer admitting to the events in Exhibit 42 [the FBI Form 302], even without his signature on this exhibit?" Second, even if the jury was confused about whether the FBI Form 302 was a transcript, the district court certainly did not lead them to believe that it was, and in fact, the district court's answer negates this contention. The district court instructed the jury that it was up to the jury to determine whether the statements contained in the FBI Form 302 were made at all, and if the jury determined that they were made, whether the statements were truthful and accurate. Finally, neither this Court or the district court may properly examine Brown's alleged statements to determine the validity of the district court's answer to the jury's question. Pursuant to Fed. R. Evid. 606(b),

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith ... Nor may a juror's affidavit or evidence of any

15

statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Viewed as a whole, the instructions, including the answer to the jury's question regarding FBI Form 302, were not confusing, misleading, or prejudicial.

**F. Whether the District Court Erred in Refusing to Hold a Hearing at Which the Juror Brown Could Have Testified.**

Neither party includes a separate argument on this issue. As explained in subsection "E" neither this Court or the district court may properly examine the juror Brown's alleged statements. FED. R. EVID. 606(b).

**G. Whether the District Court Committed Error in Finding Fifer to be a Career Criminal.**

1. Standard of Review

A district court's determination that a defendant is a career offender under the Sentencing Guidelines is subject to *de novo* review. *United States v. Dolt*, 27 F.3d 235 (6th Cir. 1994).

2. Analysis

Fifer argues that his Sixth Amendment rights were violated when the district court sentenced him as a "career offender" under U.S.S.G. § 4B1.1[6] without a jury determination that

---

[6] U.S.S.G. § 4B1.1, Career Offender provision states that:

> a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of

he was a person convicted of the predicate offenses alleged or that the predicate offenses were committed on occasions different from one another. Second, Fifer argues that the district court did not comply with the requirements of *United States v. Shepard*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), in concluding that Fifer's prior convictions constituted violent felonies within the meaning of the provision. The Government did not respond to Fifer's arguments.

First, Fifer is not entitled to a jury determination of whether he meets the requirements of U.S.S.G. § 4B1.1. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005) (The § 4B1.1 career-offender enhancement "stems from the very type of recidivism enhancement that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)(parallel citations omitted), held need not be charged and proved before a jury."); *See also United States v. Coteat* ,133 Fed. Appx. 177, 181 (6th Cir. 2005)("[The Supreme] Court has continued to except such fact finding from the requirements of the Sixth Amendment.")

Next, we find that the district court's determination that Fifer's prior offenses constituted violent felonies or serious drug offenses within the meaning of U.S.S.G. § 4B1.1 was made without sufficient proof. The district court appears to have relied solely on the presentence report in determining that Fifer met the career offender definition. In *Shepard*, the Supreme Court explained that in determining whether a defendant meets the definition of an armed career criminal under U.S.S.G. § 4B.1.4 based on his prior convictions, the sentencing court "could

violence or a controlled substance offense.

17

look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after *trial* was for [a generic predicate offense]." 544 U.S. at 15-16 (emphasis added)(discussing *Taylor*). Further, where a conviction is based on a plea bargain, "a later court determining the character of a [predicate offense] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id*.

The Sixth Circuit has interpreted *Shepard* and *Taylor* to mean that a district court's determination of whether a defendant is a career offender under U.S.S.G. § 4B1.1 must be based on information contained in the judicial record. *United States v. Calloway*, 2006 WL 2075282 at * 4 (6th Cir. July 26, 2006). Regarding whether a district court may look to a presentence report for predicate offences, we explained in *Calloway* that a presentence report could theoretically pass muster under *Shepard* if the facts relied upon by the district court in the report had been incorporated into the report by judicial reference. *Id*. (citing, *United States v. Sanders*, 404 F.3d 980 (6th Cir.2005)).

In *Sanders*, we vacated and remanded a district court's determination that the defendant-appellant was an armed career criminal under U.S.S.G. § 4B1.4, where the decision appeared to have depended solely on a presentence report that did not reference the judicial record as the basis for the information contained therein. We explained in *Sanders* that,

> [w]e are unable to determine from the present record on appeal whether the district court complied with the requirements of *Shepard* and *Taylor* in concluding that [appellant's] prior convictions constituted violent felonies within the meaning of the Act. The transcript of the sentencing hearing indicates that the district court found that Sanders "ha[d] been previously convicted of three violent felonies, specifically, burglary in Mahoning County Common Pleas case number 80CR421, robbery in Trumbull County Common Pleas case

18

number 81CR11, and aggravated robbery in Trumbull County Common Pleas case number 83CR359," but the record fails to indicate on what basis the district court concluded that these prior convictions were for qualifying offenses.

The only documentation in the record on appeal concerning these prior convictions is found in the presentence report prepared by the probation officer. The district court never explicitly indicated, however, that it was relying upon that report in determining whether Sanders was an armed career criminal. In any event, even if a presentence report could generally satisfy the requirements of *Shepard* and *Taylor,* which is doubtful, the presentence report in this case clearly does not; it fails to include even the most basic information about Sanders's prior convictions—such as: (1) for each of the three offenses, what statute Sanders was convicted of violating; and (2) whether the respective prior convictions were resolved by trial or by plea agreement...

The facts in *Sanders* bear similarity to Fifer's case, and we apply a similar analysis here. It appears from the sentencing transcript and the record on appeal that the only document that the district court relied on in finding that Fifer's prior convictions were qualifying offenses under U.S.S.G. § 4B1.1 was the presentence report prepared by the probation officer. Like the presentence report in *Sanders*, the presentence report here also fails to indicate for each of Fifer's prior convictions (1) the statute Fifer is convicted of violating, and (2) whether the respective prior convictions were resolved by trial or by plea agreement. In light of this absence of information, the presentence report does not meet the requirements set forth in *Shepard* and *Taylor*. Accordingly, we remand to the district court to either explain the basis for its conclusion that the prior convictions were qualifying offenses under U.S.S.G. § 4B1.1, or to sentence Fifer anew in accordance with *Shepard* and *Taylor*.

**H. Whether the District Court Committed a *Booker* Error in Sentencing Fifer.**

Fifer argues that the district court committed plain error by sentencing him under mandatory guidelines rather than advisory guidelines. The Government avers that the defendant's sentence should be vacated and remanded for re-sentencing in light of *United States v. Booker*,

543 U.S. 220 (2005).

At the time of the sentencing the district court was required to find that the Sentencing Guidelines were mandatary pursuant to this Court's decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004). However, in *Booker*, the Supreme Court held that the Sentencing Guidelines are "effectively advisory." 543 U.S. at 245. We vacate and remand Fifer's sentence to be recalculated by the district court in accordance with *Booker*.

### III. CONCLUSION

Finding no errors warranting reversal of Fifer's conviction regarding issues A-F, we AFFIRM the district court's rulings. However, we REMAND to the district court whether Fifer was properly deemed a "career offender" under to U.S.S.G. § 4B1.1. The district court is required to explain the basis for its conclusion that Fifer's prior convictions were qualifying offenses, or to sentence Fifer anew in accordance with *Shepard* and *Taylor*. Finally, we VACATE and REMAND Fifer's sentence to be recalculated in accordance with *Booker*.