**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0122n.06
Filed: February 15, 2007

**05-2480**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DAWAN K. KENNEY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges, and WEBER,[*] District Judge.

PER CURIAM. The defendant, Dawan Kenney, was convicted of transporting aliens within the United States for commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i), and was sentenced to a term of 16 months in prison. On appeal, she challenges the sufficiency of the convicting evidence and objects to the introduction at trial of certain evidence that she maintains was inadmissible hearsay. Because we find no reversible error, we affirm the judgment of the district court.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[*]The Hon. Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

The trial record establishes that the defendant first came to the attention of federal authorities through a tip from Ronald Kaye, the deck hand on a ferry that travels between the Clay Township and Harsens Island, Michigan. Aliens coming in by way of Canada are frequently smuggled from Harsens Island via the ferry to the mainland less than a mile away, and Kaye often assisted the police, keeping an eye out for suspicious activity and calling the police when he suspected some form of smuggling. He testified that on the evening of November 6, 2003, he observed the defendant board the ferry in her vehicle and remembered seeing her on the ferry a few days earlier. On that occasion, she had taken the ferry to Harsens Island and returned a short while later with a number of people in her car. Although this struck Faye as suspicious at the time, he could not remember how many people were in the car on the way to the island, and so he did not call the police. However, when the defendant boarded the ferry again on November 6, Faye paid particular attention to the number of people in the vehicle. It is unclear from the record on appeal whether Faye observed the defendant board the ferry alone or with one passenger in her vehicle, but it is clear that when she returned a short while later, there were seven people in her vehicle, counting Kenney. Kaye therefore called ahead to the Clay Township police, who met the ferry on the dock at the mainland side.

Border patrol agents soon arrived on the scene and questioned Kenney and her passengers. Agent Andrew Sproul, the first agent on the scene, testified that he conducted an immigration check on each of the individuals. Kenney, who was in the driver's seat of the vehicle, and her boyfriend, David Wright, who was sitting in the passenger's seat, both

produced identification confirming that they were United States citizens. The passenger sitting directly behind Kenney, who had a thick Caribbean accent, identified himself as Joseph Johnson, produced a Florida driver's license, and claimed to be a United States citizen. It was later determined that "Joseph Johnson" was a false name and his real identity was Dennis Jackson, a Jamaican citizen. The remaining four passengers, Sherali Lakhani, his wife, Amina Lakhani, their minor son, Asad Lakhani, and another unrelated man, Salim Khemani, did not speak fluent English but were nonetheless able to identify themselves as Indian citizens who had just been picked up by the defendant.

Agent Christopher Geoffroy, the supervising agent on the night of November 6, testified that he arrived on the scene shortly after Agent Sproul and separately interviewed each of the three individuals claiming to be United States citizens. The defendant told Geoffroy that earlier that day, she had picked up her boyfriend, that they went to a bowling alley, and that from there they decided to go to a bar on the island because it was a "great place to party." She first said that Joseph Johnson was her cousin's boyfriend and was just going along for the ride but later described Joseph Johnson as a friend. She explained that she had picked up the four Indian citizens as a favor for another friend.

David Wright's account of the day differed from Kenney's. Wright told Geoffroy that Kenney had picked him up at his house in Detroit at 9 p.m. and that they had driven straight to the island, and he denied that they had been bowling that day. Agent Geoffroy

related this conversation over a hearsay objection by defense counsel, but the objection was summarily overruled on the basis of the co-conspirator exception.

When Geoffroy interviewed the man later identified as Dennis Jackson, he again produced the false paperwork bearing the name Joseph Johnson, explained that his accent was the result of spending time with people originally from the Caribbean living in the area of Florida where he grew up, and stated that he was in the car because Kenney was giving him a ride to his girlfriend's house.

Based on the inconsistencies in the individual stories, Geoffroy arrested the defendant, Wright, and Jackson on charges of smuggling and transported them to the border patrol station. There, Kenney was interviewed again by Geoffroy and on two occasions by another border patrol agent, Glenn Lendel. Lendel testified that in his first interview with Kenney, she continued to deny responsibility for smuggling, as she had with agent Geoffroy. In the subsequent interview, however, he confronted Kenney with the information that the ferry deck hand remembered her from a few days earlier, and Kenney confessed that she had knowingly engaged in smuggling on both occasions, explaining that she had been hired by a third party to transport the aliens and paid $600 for the previous occasion and that she expected a similar amount for the most recent incident. Kenney described in detail the arrangements that she had followed and identified the others who were involved in the smuggling operation. She also provided the agents with

her cell phone, from which the agents recovered the phone number of a known alien smuggler.

Sherali Lakhani, one of the Indian men in Kenney's vehicle, also testified at Kenney's trial. He explained that he had paid a smuggler $2,000 per person to transport him and his family from Canada to the United States because he could not find work in Canada. Most pertinent to Kenney's case, he testified that as part of this journey, he arrived on a dock and saw a woman that looked like Kenney standing by a vehicle and motioning for him and his family, along with the two other aliens, to come quickly into her vehicle. He also testified that after they all got in the vehicle and arrived on the mainland, Kenney noticed the police and motioned for them to duck down.

Based on this evidence, the district judge, sitting as fact-finder, found the defendant guilty. She now appeals the conviction.

## DISCUSSION

The defendant contends that there was insufficient evidence to sustain her conviction because "[u]nder the totality of the circumstances, the [defendant's statements after arrest] were not sufficiently proved to have been actually made." To support this argument, the defendant points to the circumstances surrounding her confession, emphasizing the fact that it was not tape-recorded, and to alleged inconsistencies in the agents' testimony at trial, arguing that the testimony was not credible and should not have

been accepted by the trial judge. However, the defendant fails to identify a lack of evidence as to any specific element of the crime and, based on our examination of the record, we find none.

We review the sufficiency of the convicting evidence in a criminal trial under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under that well-established authority, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Moreover, we have "long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the [fact finder]" when addressing sufficiency of the evidence. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Yet, here, the defendant's entire argument is premised on our making adverse credibility determinations regarding the agents' testimony, which, of course, we may not do. *See United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (holding that discrepancies in a witness's testimony elicited on cross-examination "are irrelevant to the sufficiency of the evidence analysis because they improperly ask us to weigh the evidence or to assess [the witness's] credibility.").

The defendant's reliance on *Crane v. Sowders*, 889 F.2d 715 (6th Cir. 1989), in support of her argument is misplaced. In *Crane v. Kentucky*, 476 U.S. 683, 689 (1986), the Supreme Court held that it was constitutional error for the trial court to exclude

evidence regarding the circumstances of the defendant's confession, even though the defendant had previously lost a motion to suppress the confession, and the Court remanded the case for consideration of whether the error was harmless. In *Crane v. Sowders*, we then held that the error was not harmless. *See* 889 F.2d at 718. In this case, however, the defendant does not allege that the trial judge excluded any evidence or refused to consider the circumstances of the confession when making its credibility determinations; to the contrary, the record on appeal indicates that evidence regarding the reliability of the confession was presented at trial and was the subject of comment by the district judge, who specifically found the agents' testimony credible despite the fact that the defendant's confession was not tape-recorded.

Applying the correct standard, it is clear that there was sufficient evidence presented at trial to convict Kenney of transporting aliens within the United States for commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). Under the statute, the government had to prove that Kenney's passengers were aliens unlawfully in the United States, that Kenney had knowledge of or a reckless disregard for this fact, and that Kenney transported or attempted to transport the aliens for commercial advantage or private financial gain. *Id.*

Viewed in the light most favorable to the government, the testimony presented at trial undoubtedly established each of these elements. The testimony of the agents as well as that of Sherali Lakhani established that five of Kenney's six passengers were aliens

unlawfully in the United States, and their testimony along with that of Ronald Kaye established that Kenney transported the aliens from Harsens Island to the main land. There was also ample testimony that Kenney knew that her passengers were aliens in the United States unlawfully, including: Sherali Lakhani's testimony that Kenney gestured for her passengers to get in the car quickly and later gestured for them to duck down to avoid detection by the police; the inconsistencies in Kenney's explanation to the agents before her arrest, as well as the incredible nature of her story; the suspicious circumstances of the transport in general, including the time of day, her quick return from the island, and Kenney's unfamiliarity with five of her passengers and inability to communicate with four of them; and, finally, Kenney's own confession. There was also ample evidence that Kenney undertook the transport for financial gain: Sherali Lakhani testified that he had paid $6,000 to a smuggler, indicating that the entire operation was a commercial transaction rather than a favor; Ronald Kaye testified that he had seen Kenney make a quick trip to the island and return with multiple passengers in the past, suggesting that Kenney was not simply doing a favor for a friend but rather was part of an on-going enterprise; the agents' testimony that the telephone number of a known smuggler was found in Kenney's cell phone records; and Kenney's admission that she had received $600 from her previous transport and expected to receive a similar sum for her November 6 trip. From all of this, there can be no doubt at all that the defendant's conviction is supported by legally sufficient evidence.

Nor do we find any reversible error in connection with the introduction of the agent's summary of Wright's statement that he and Kenney had not gone bowling on November 6, introduced to impeach her credibility. The district court ruled that Wright's out-of-court statement was admissible as the declaration of a co-conspirator, a ruling that appears somewhat dubious given the lack of evidence in the record that Kenney and Wright were actually engaged in a conspiracy. However, we conclude that the out-of-court statement by Wright was not hearsay under Federal Rule of Evidence 801(c), because it was not offered to prove that the declarant did not go bowling on November 6, but only that he said as much. Moreover, as non-hearsay the testimony does not implicate any Sixth Amendment concerns such as those raised in *Crawford v. Washington*, 541 U.S. 36 (2004). Even if the testimony could be taken as hearsay, moreover, we conclude that any error was harmless in view of the overwhelming evidence of the defendant's guilt.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.